CASE 61—INDICTMENT— MAY 8.

# Warren v. Commonwealth.

APPEAL FROM HARDIN CIRCUIT COURT.

1. HOMICIDE—EVIDENCE—CONDUCT OF PROSECUTING ATTORNEY.—On the trial of an indictment for homicide, evidence introduced by the Commonwealth that the deceased left a wife and four children and that the wife had been sick ever since her husband's death was not material and did not operate to the prejudice of defendant's substantial rights; nor did the customary speech of the prosecutor in such cases with regard to the reputation of the State for crimes of violence and the disgrace a failure to convict would, as he claimed, bring upon the county, have the effect to inflame the minds of the jury, it appearing that the penalty imposed was the lowest permitted for voluntary manslaughter.

2. EVIDENCE—WHEN DEFENDANT IS INTRODUCED AS WITNESS.—When a defendant puts himself on the stand as a witness, he thereby submits himself to such cross-examination as any other witness may be subjected to. (Burdette v. Commonwealth, 93 Ky., 77.)

3. DISCREDITING WITNESS ON CROSS-EXAMINATION.—While counsel should not be given unrestricted liberty in cross-examination of a witness with reference to his past life, history and habits, yet he may be asked such questions as tend to shake his credit by injuring his character, and he may be cross-examined as to specific

facts, tending to disgrace or degrade him, although such facts are irrelevant and collateral to the main issue; but the extent to which such cross-examination may be carried is within the discretion of the court.

4. EVIDENCE—GENERAL MORAL CHARACTER.—Evidence introduced by the defense that a prosecuting witness was a "tough negro," would undoubtedly be understood by jurors generally as putting in issue his general moral character, and would give the prosecution the right to introduce evidence to sustain the same.

5. HOMICIDE—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS.—An instruction as to involuntary manslaughter was properly refused in this case where the deceased was accidentally killed while the defendant was either defending himself against another or attempting to kill such other. The distinction between such a case, and one in which there is an unintentional discharge of a pistol lies in the intent.

HOBSON & O'MEARA FOR APPELLANT.

1. The lower court erred in overruling an objection to testimony introduced by the Commonwealth to the effect that the deceased's wife and children were left in a destitute condition, as it was incompetent and introduced for the purpose of prejudicing the jury. (2 Bishop Crim. Pro., sec. 263.)

2. In a criminal case the State can not ask any question on a pretext of cross-examination of the defendant, that could not properly be asked of any other witness in the case, and the lower court erred in overruling the appellant's objection to such testimony. (1 Wharton on Evidence, sec. 541; 1 Wharton on Evidence, 545, 551, 562.) The cross-examination of a witness must be confined to matters stated in his direct examination, unless to discredit the witness by evidence of prior contradictory statements. (Wills v. Russell, 100 U. S., 621; 1 Greenleaf on Evidence, secs. 454, 455, 459, 461.)

3. The fact that a man has been put in jail to *get* sober does not affect his credibility *when* sober. The lower court erred in overruling objection to testimony, showing that witness had been jailed for drunkenness.

4. Until the general moral character of the State's witness had been impeached, the State had no right to introduce proof to sustain it. (Vance v. Vance, 1 Met., 583; Atwood v. Dearborn, 79 Am. Dec., 755.) The character of a witness can not be sustained by the personal knowledge of the sustaining witness. Burdette v. Commonwealth. 93 Ky., 76, in so far as it applies to this case, should be overruled.

5. There is no distinction in principle between a pistol being uninten-
   . tionally discharged and the bullet being fired from a pistol and
   striking another object, then glancing where it could not reasona-
   bly be anticipated to strike, and according to this theory the
   court should have given instruction as to involuntary man-
   slaughter. (Trimble v. Commonwealth, 78 Ky.|, 176.)
6. The appellant had a right to act on reasonable appearances at the
   time and was not required to wait until the negro made an actual
   attempt to kill him. There are cases in shooting affrays like this
   where the evidence may show a state of case in which both parties
   would be justifiable on the grounds of self-defense. (Doolan v.
   Commonwealth, 95 Ky., 29.) The appellant thought that the
   negro fired the first shot, and even though he did not think so he
   could not be expected to await his assailant's fire, and the court
   erred in instructing the jury to find against him unless they be-
   lieved he was attacked first. Instructions substantially the same
   as this have been condemned. (Haney v. Commonwealth, 5 Ky.
   L. Rep., 203; Amos v. Commonwealth, 16 Ky. L. Rep., 358; Cock-
   rill v. Commonwealth, 95 Ky., 22.)

W. S. TAYLOR FOR APPELLEE.

1. A witness may be examined for purposes of impairing his credibil-
   ity as to specific facts tending to disgrace or degrade him, although
   such facts are irrelevant and collateral to the main issue. (Bur-
   dette v. Commonwealth, 93 Ky., p. 78.)
2. The appellant was evidently trying to shoot one man and killed an-
   other and the facts did not authorize an instruction as to involun-
   tary manslaughter.

JUDGE Du RELLE DELIVERED THE OPINION OF THE COURT.

This appeal is prosecuted from a judgment of conviction
for voluntary manslaughter.

The first ground urged for reversal is that the Common-
wealth, against objection by the defense, was allowed to
prove that the deceased left a wife and four children, and
his wife had been sick ever since her husband's death, and
that the Commonwealth's attorney was permitted in his
argument to the jury to comment upon the fact that the

defense had objected to an explanation of the absence of the widow from the trial.

The evidence does not seem to be particularly material, but in our judgment did not operate to the prejudice of the substantial rights of the defendant. Neither this evidence nor the speech of the prosecutor to the effect, customary in such cases, in regard to the reputation of this State for crimes of violence and the disgrace which it was claimed would come upon the county in the event of a failure to convict the defendant, appear to have had the effect to inflame the minds of the jury, for the penalty imposed was the lowest permitted for voluntary manslaughter.

The next objection is that upon cross-examination of the defendant, who was sworn as a witness in his own behalf, the prosecution, against objection, was permitted to ask questions, the effect of which was to discredit him as a witness before the jury. These questions were as to whether he had any employment, how long since he had had work, and whether his crippled foot had prevented his working four or five years before it became injured. Undoubtedly these questions were asked for the purpose of discrediting him as a witness by showing from his answers that he was a trifling person, with no fixed employment. The questions were entirely irrelevant to the commission or circumstances of the homicide, and if he had denied the facts suggested by them he could not have been contradicted. When a defendant puts himself on the stand as a witness he thereby submits himself to such cross-examination as any other witness may be subjected to. (Burdette v. Commonwealth, 93 Ky., 77.)

A witness may, on cross-examination, be asked any questions which tend "to shake his credit by injuring his charac-

ter," and may be compelled to answer such questions, though it is said that "the court has the right to exercise a discretion in such cases, and to refuse to compel such questions to be answered, when the truth of the matter suggested would not, in the opinion of the court affect the credibility of the witness as to the matter to which he is required to testify." (Am. and Eng. Ency. Law, section 7, page 109, quoting from Stephen's Digest of the Law of Evidence.) And it is said in Taylor on Evidence, section 1462, that "it seems to be generally conceded that, where the answer which the witness may give will not immediately and certainly show his infamy, but will only *indirectly tend* to disgrace him, he may be compelled to reply." (See also Greenleaf on Evidence, section 456.)

We are not to be understood as holding that counsel are to be allowed unrestricted liberty in cross-examination of this character, or that a witness is to be compelled to submit to an exploration of the most remote passages of his past life by means of fishing questions in regard to scandalous or discreditable acts. As said in Wharton on Evidence, "every man is entitled to such a measure of oblivion for the past as will protect him from having it ransacked by mere volunteers." And in Taylor on Evidence, section 1460-61, it is said: "No doubt cases may arise where the judge, in the exercise of his discretion, would very properly interpose to protect the witness from unnecessary and unbecoming annoyance. For instance, all inquiries into discreditable transactions of a remote date might, in general, be rightly suppressed, for the interests of justice can seldom require that the errors of a man's life, long since repented of and forgiven by the community, should be recalled to remembrance at the pleasure of any future litigant. So

questions respecting alleged improprieties of conduct, which furnish no real ground for assuming that a witness who could be guilty of them would not be a man of veracity, might very fairly be checked. But the rule of protection should not be further extended; for, if the injury relates to transactions comparatively recent, bearing directly upon the moral principles of the witness and his present character for veracity, it is not easy to perceive why he should be privileged from answering, notwithstanding the answer may disgrace him."

And so this court in the case of Burdette v. Commonwealth before referred to, citing with approval Kansas v. Pfefferle, 30 Kansas, 90, arrived at the conclusion that according to the tendency of modern authorities, as well as upon principle, a witness may, for the purpose of impairing his credibility, " be cross-examined as to specific facts tending to disgrace or degrade him, although such facts are irrelevant and collateral to the main issue, and we see no good reason whatever why such test may not, in a proper and pertinent manner, *and under control of the court*, be applied." In our opinion the questions complained of do not call for revision by this court of the exercise of discretion by the trial judge. What has been said upon this objection applies also to the objection made to the questions asked of another witness, namely, how often he had been in jail, and if he didn't make it a business to lie around Elizabethtown drunk during elections, and bleeding candidates. The answer given that he had been in jail something less than a thousand times, and that he had been in town and gone home without getting full when he had money to get whisky with, would indicate that the question was a proper one on the cross-examination of that witness.

It is further objected that the State was permitted to introduce a witness to sustain the moral character of the negro, Franklin. The objection is based on the ground that the defense had not attempted to impeach his general moral character, "but only his character for peace and quiet, and being a tough negro." In response to this it may be said that the statement of the witness that Franklin was a tough negro would undoubtedly be understood by jurors generally as putting in issue his general moral character.

This brings us to the errors alleged in the instructions. The defense asked an instruction as to involuntary manslaughter upon the theory that there is no distinction in principle between the unintentional discharge of a pistol and a bullet from a pistol glancing where it could not reasonably be anticipated to strike. The distinction lies in the intent. There is no evidence in this case of a shooting without the intent to kill. (Connors v. Commonwealth, 13 Bush, 718.)

The defendant either did not kill Vittitoe at all, or killed him while defending himself against Franklin, or killed him while attempting to kill Franklin. There was nothing in the case to justify an instruction upon involuntary manslaughter. (Trimble v. Commonwealth, 78 Ky., 178.)

The defense also complains of the refusal of the court to give the following instruction:

"*B*. If at the time defendant shot and killed Vittitoe, if he did so shoot and kill him, he believed and had reasonable grounds to believe that his life was in imminent danger, or that he was in imminent danger of receiving great bodily harm at the hands of Sheed Franklin, and that he had no other apparently safe means of escape except by shooting

him, and in attempting to shoot said Franklin he accidentally shot said Vittitoe, then the law is for the defendant and the jury should so find."

In lieu of the instruction asked the court gave instructions 4 and 5, which seem to us to fully cover the law of self defense as applicable to the evidence adduced in that behalf in this case.

Judgment affirmed.