CASE 50—MOTION OF ATTORNEY-GENERAL TO MODIFY RESPONSE TO PETITION FOR REHEARING IN CASE OF COMMONWEALTH v. WELCH— June 22.

# Commonwealth v. Welch.

APPEAL FROM HENRY CIRCUIT COURT.

MOTION OF ATTORNEY-GENERAL DENIED.

WITNESS—CROSS EXAMINATION OF THE ACCUSED—EVIDENCE OF PARTICULAR WRONGFUL ACTS.

Held: Civil Code Practice, section 597, providing that a witness shall not be impeached "by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony," applies to the cross-examination of a defendant in a criminal case, where he offers himself as a witness.

The Attorney-General, Robt. J. Breckinridge, on his motion to modify the response to the petition for rehearing in this case, states as follows:

Commonwealth v. Welch.

"I have read the response with great care and it seems to me that it overrules not only the opinion in the three cases mentioned, but changes entirely the reach and extent to which cross-examination of witnesses has been for many years permitted both by precedent and authority, and so limits the cross-examination as almost to preclude any inquiry as to the past life and conduct of the witness, and thus may permit the greatest criminal to escape or the innocent to be convicted. The innocent should not be convicted, nor the guilty allowed to escape on the evidence of witnesses whose past life and conduct will not bear such scrutiny as will give a jury a fair opportunity to judge of their credibility.

"It may not be within the purview of my duty to do more than obey and assist in the enforcement of the decrees of this court, but in a matter of the far-reaching effect of this opinion, I feel the court will permit the suggestion herein."

For former opinion, see 110 Ky., 105 (60 S. W., 185), (23 Ky. Law Rep., 151).

OPINION OF THE COURT BY JUDGE DuRELLE—DENYING MOTION.

In this case there has been filed by the attorney general a motion to modify the response to the petition for rehearing. No authority is cited in support of the motion, and the argument urged to sustain it is as follows: "I have read the 'response' with great care, and it seems to me that it overrules not only the opinion in the three cases mentioned, but changes entirely the reach and extent to which cross-examination of witnesses has been for many years permitted both by precedent and authority, and so limits the cross-examination as almost to preclude any inquiry as to the past life and conduct of the witness, and this may permit the greatest criminal to escape, or the innocent to be convicted. The innocent should not be convicted, nor the guilty allowed to escape, on the evidence of witnesses whose past life and conduct will not bear such scrutiny as will give a jury a fair opportunity to judge of their credibility." The three cases referred to are Mitchell v. Com. (12 L. R., 458) 14 S. W., 489; Roberts

v. Com. (14 R., 219) 20 S. W., 267; and Burdette v. Com., 93 Ky., 76 (13 R., 960) 18 S. W., 1011. So broad a statement from the chief law officer of the State government would seem to call for some attention from the court.

In the first place, there is no question in the mind of any member of the court that the ruling of the original opinion upon the question of evidence therein stated was absolutely correct. To impeach or discredit or disparage a witness for the defense, a deputy sheriff was allowed to testify that he had a warrant for the arrest of the witness; and the Commonwealth's attorney was allowed to read the warrant to the jury, charging the witness with the offense of detaining a female under twenty-one years of age, with intent to have carnal knowledge of her. There never has been a day in the history of the Commonwealth when such evidence was admissible for such purpose. By petition for rehearing, the Commonwealth relied on the three cases above-mentioned, as sustaining the admissibility of the testimony complained of on the appeal. In its response to the petition, and in answer to the doctrine therein stated and contended for, the court took occasion to comment on those cases, and to expressly overrule them, to the extent—and no further—to which they had been already, in substance, overruled in various opinions. The question whether section 597 of the Civil Code of Practice was applicable to cross-examination was brought before the court by the petition for rehearing, and in its response the court simply reiterated the rule which it had on several occasions followed. The question was not presented or argued upon the hearing of the case, but, having been presented and argued by the petition for rehearing, it was thought best, for the guidance of the circuit courts, to announce the views of this

court upon a question of such frequent occurrence. It may be that it was unnecessary to state the opinion of the court upon this question in this case.    But, if the statement be a correct one of the views of the court upon the question, it should not be withdrawn, lest its withdrawal should mislead the circuit courts.

Section 597 of the Code, which is the same as section 661 of the old Code, except that the word "untruthfulness" has been substituted for "truth," is as follows:  "A witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief; but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony."    Section 598 provides a limitation upon the mode of impeachment by contradiction.    The question before the court is, how far, if at all, does the Code provision affect the right of cross-examination?    In considering this question, it may be regarded as settled law that the same rule applies to a person accused, when testifying in his own behalf, as to any other witness.    This has been the uniform rule in this State.    McDonald v. Com., 86 Ky., 13 (9 R., 230) 4 S. W., 687; Parker v. Com. (21 R., 405), 51 S. W., 573; Lockhard v. Com., 87 Ky., 201, 10 R., 102; 8 S. W., 266; Pace v. Com., 89 Ky., 204; 14 R., 407, 12 S. W., 271; Burdette v. Com., 93 Ky., 76, 13 R., 960; 18 S. W., 1011; Saylor v. Com., 97 Ky., 184, 17 R., 100, 30 S. W., 390. It may be assumed, also, that before the adoption of the Code of 1854 the doctrine indicated by Chief Justice Robertson, in 1830, in Sodusky v. McGee, 5 J. J. Marsh. 622, 625, as to the proper limits of cross-examina-

tion, had been considerably modified by the current of authority. In that case it was said: "A witness should not be compelled to prove his own general character; nor should he be required to prove any special fact reflecting on his character, unless it be pertinent to the issue independently of its tendency to affect character. His character could not be assailed by proof by other witnesses of particular facts, and certainly it would be improper to compel him to prove facts relating to his character which others would not be permitted to prove." In that case the witness was asked "if he was not engaged at the time or shortly before the commencement of that fight, some distance off, playing cards with a negro fellow." The court held that: "It was, of course, immaterial with whom he was engaged, unless the object of the question was to affect the character of the witness; and then, as already shown, the counsel for appellee, as well as the witness, had a right to object to it, because that was not the legal mode of attacking his character."

It may be safely assumed, however, that even as early as the adoption of the old Code the trend of the authorities in this country, in the absence of statutory regulation, was at least in the direction of the doctrine as laid down in Greenl. Ev., sections 447-460; and much greater latitude was allowed on cross-examination than would be indicated by the extract given from the opinion in the Sodusky case. If we examine the statute, we find that the word "impeach," as there used, has evidently a more comprehensive sense than that which would be attached to it by a strict and literal definition. Strictly speaking, the word "impeach" imports a successful attempt to establish the charge of want of veracity. It imports destruction of the witness' testimony. But, as generally used, it compre-

hends, also, the attempt to establsh such a charge, whether· unsuccessful or successful, in whole or in part. 15 Am.. & Eng. Ency. Law, 1060.   It not only means destruction,. but it means attack, and it includes disparagement and discredit, which may be considered degrees of impeach- ment.   A witness may be impeached or attacked, under the· Code, whether the attack results in the· rejection of his. testimony, or in the rejection of such ·part ·only as is not supported by corroborative testimony.   And it would seem, if we are guided by the language of the statute· alone, to apply not only to the attack by the testimony of' others, but to attack upon cross-examination.   ·Section 598 prescribing the mode of impeachment by contradiction, has it distinctly in view that the foundation should be laid upon cross-examination, and has been uniformly so· construed.   And the provision in section 597 "that it may be shown by the examination of a witness   .   .   . that he has been convicted of a felony" has· uniformly re- ceived the construction that such conviction may be shown by the cross-examination of the witness himself whose· testimony is attacked.   It would seem, therefore, that, so far as the language of .the statute itself is to be ·our· guide, there is nothing in it which prevents its applica- tion both to attack or impeachment by the testimony of' other witnesses, and to attack or impeachment by the cross-examination of the witness himself, or, as it is us- ually termed, "cross-examination as to credibility."   · Now the statute may be divided into two parts,—one part de- claratory and permissive, and the other part prohibitory.. It declares that the witness may be impeached by showing previous contradictory statements made by him..   This is merely declaratory, except in so far as the mode is reg- ulated by the succeeding section, which looks to cross-

examination; for he could have been impeached or attacked in that manner without the permission of the statute. The statute declares and permits that he may be impeached by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief. This may be considered to be both declaratory of the existing law and permissive; for the cases before the old Code had been somewhat in conflict as to the right to show a witness' general bad moral character, though the doctrine was reasonably well settled that it might be done. Mobley v. Hamit, 1 A. K. Marsh., 591; Hume v. Scott, 3 A. K. Marsh., 261; Blue v. Kibby, 1 T. B. Mon., 195, 15 Am. Dec., 95. Then follows a prohibition,—"but not by evidence of particular wrongful acts." This seems to be declaratory of the existing law, at least as to the testimony of witnesses other than those under attack. Evans v. Smith, 5 T. B. Mon., 365, 17 Am. Dec., 74; Hart v. Reed, 1 B. Mon., 170, 35 Am. Dec., 179. Then follows an exception to the prohibition, which is in terms permissive,—"except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony." This is both declaratory and permissive. By the law aforetime the infamy of a witness could be shown by the production of the record of the judgment of a court of competent jurisdiction, showing his conviction of an infamous crime. 1 Greenl. Ev. section 365; Com. v. Gorham, 99 Mass., 420. • That was the only way the judgment of conviction could be shown. Id. The fact of conviction of an infamous crime could not be shown by the testimony of a witness, before this statute. But the uniform practice is conceded to be that under this statute it is permissible, upon cross-examination, to show by the witness himself that he has been convicted of felony. If

the statute does not apply to cross-examination, that practice is error.

It is to be observed that the statute, thus construed, does not in any way abridge the common-law right of cross examination except with regard to the matter expressly prohibited, and then only when such matter is introduced for the purpose of impeachment or attack. He may be cross-examined upon collateral facts to test his recollection (1 Greenl. Ev., section 449), but his answer is conclusive, and can not be contradicted, because the inquiry is collateral to the issue. He may be examined as to matters showing bias, hostility, and interest (Id. section 450; Best, Ev. section 325); and upon such questions, as they are not collateral, but material, he may be contradicted. He can not be compelled to answer as to facts which would expose him to a criminal charge (1 Greenl. Ev. section 451); nor, under the statute, may he be required to give evidence of particular wrongful acts (that is to say, criminal acts), except as permitted by the statutory exceptions to the statutory prohibition. As matter of course, particular wrongful acts (that is, crimes) committed by a witness may be shown, where such crimes are relevant to the issue in the case, without regard to the question whether they affect the character of the witness. It may be assumed that such offenses may be shown by the witness himself in cases where he is not protected by some other rule of evidence, when such offenses are material to the issue in the case on trial. And we have held, in the recent case of Abbott v. Com., 23 R., 226 (62 S. W., 715), that even upon a trial for murder the commission of another murder might be shown, because it tended to establish the motive of the crime for which the accused was on trial; and so in Mar-

Commonwealth v. Welch.

tin v. Com., 93 Ky., 193 (14 R., 95), 19 S. W., 580. He may be interrogated as to his life and his associates, just as he could without the statutes, within the same reasonable limits of time, except where the general rule as to such interrogation is in conflict with the letter of the statute.

Now, when we come to consider the adjudged cases, we find a very peculiar condition. There are two cases where the general rule as laid down in the text-books has been applied to the cross-examination of witnesses, without applying the restriction of the statute. In neither of these cases was the statute considered by the court. In one of them it is claimed that it was cited in the brief of counsel, but it most assuredly was not considered or mentioned in the opinion. On the other hand, in four cases the statute was held to apply to cross-examination, —sometimes unnecessarily so held, because the questions asked were not permissible under the general rule, but they were held by this court to be within the prohibition of the Code. The Mitchell case, supra, has no bearing whatever upon the question before us. The question complained of in that case was permissible under the terms of the Code provision. The defendant was asked if he had not been in a State prison , which is, in effect, a loose and general mode of inquiry as to whether he had not been convicted of a felony. This court, in an opinion by Judge Pryor, justified the question under the general doctrine, without reference to the statute; but it might have been justified under the statute. In Roberts v. Com., supra (decided in 1892), in an opinion by Judge Bennett, this court held, upon the authority of Burdette v. Com., supra, that it was competent to ask a witness on cross-examination if he was not under indictment in another circuit for robbery, and to ask anoth-

er witness if he was not under indictment for conspiracy, and if he had not offered to swear for the defendant if the friends of the latter would assist him to get rid of the charge.    It is possible—for the opinion gives a very meager statement of the facts—that the questions as to the conspiracy indictment and as to the offer to swear for the accused might have been justifiable, as tending to bring out facts showing bias and motive, if the conspiracy was to commit the crime for which the accused was on trial. But the ruling as to the question concerning the indictment for robbery is not justifiable on any ground.  Mere charges or accusations, or even indictments, may not be inquired into upon cross-examination, under the general doctrine, since they are perfectly consistent with innocence, and may exist without moral delinquency.    Johnson v. Com. (22 R., 1885), 61 S. W., 1006; Ashcraft v. Com. (22 R., 1542), 60 S. W., 931; People v. Irving, 95 N. Y., 544.    The truth of such accusations is not to be presumed.    The fact of their existence does not properly go to the credibility of the witness.    They should therefore be excluded, for the reason that they do not show bad character; and their exclusion should be the more rigid, because the average jury, in the majority of cases, would undoubtedly understand them, as tending to show it. Ryan v. People, 79 N. Y., 600.  In the Burdette case, supra, the questions complained of were asked of the defendant on cross-examination—First, whether he had ever before been convicted of stealing; second, whether he had been arrested for breaking into a house and stealing coffee, and sent to the workhouse therefor.    The court, in an opinion by Judge Lewis, extended the general rule as laid down in 1 Greenl. Ev. sections 454, 456, and held the

questions admissible. The question as to his former conviction for stealing would have been justified, under the terms of the statute, if the conviction was for grand larceny. The Code provision is found cited in the brief for the Commonwealth, but is not in any way referred to or considered in the opinion.

It therefore appears that of the three cases which, by the opinion, are overruled in so far as they are in conflict with it, one case is not at all in conflict with the opinion of the response in this case in the matter actually decided there; another is decided upon the authority of the Burdette case, which does not at all sustain the decision; and the Burdette case was decided without reference to or consideration of the statute. It is to be borne in mind that the general rule as to cross-examination of a witness, whether testifying in his own behalf or not, is that "he may be asked any question which tends (1) to test his accuracy, veracity, or credibility, and (2) to shake his credit by injuring his character" (3 Rice, Ev. section 219d); that this rule is subject, as always, to the constitutional provision for his protection (Saylor v. Com., supra), and other rules of law not necessary to be here stated; and that is affected by the statute under consideration only in so far as that statute contain a new and specific prohibition, and a new and specific permission, not recognized by the law aforetime. The statute does not affect the materiality of matters inquired about on cross-examination, nor their admissibility for other purposes than the single one which is the subject matter of the litigation; that is, to impeach the witness, or shake his credit by injuring his character. The statute provides that this shall not be done by evidence of particular offenses, unless such offenses are of the

Commonwealth v. Welch.

grade of felonies, and unless the witness has been con-
victed, in which case it is provided that they may be
proven in a mode not sanctioned by the law before the
statute was adopted.    No reason is perceived for ex-
cluding from the operation of the statute attempts to
shake the witness' credit by injuring his character by
his own testimony, and confining its operation to like at-
tempts by the testimony of others.    If the facts inquired
of are material and relevant for other purposes,—as to
show motive or bias,—they are still admissible, notwith-
standing the statute, unless the witness be protected by
some other rule of law or constitutional provision.

Bearing these things in mind, the consideration of the
cases which, in the various arguments, have been referred
to as in conflict with or as supporting the doctrine of
the opinion and response, becomes easy.    In Warren v.
Com., 99 Ky., 373, 375, 18 R., 141 (35 S. W., 1028), the Code
provision was not considered. The general doctrine was ap-
plied, and questions as to whether the witness had any em-
ployment, how long since he had had work, and whether
his crippled foot had prevented his working four or five
years before it became injured, were held proper.    An-
other witness was asked how often he had been in jail,
and if he did not make it a business to lie around Eliz-
abethtown, drunk, during elections, and "bleed" candi-
dates.    There is nothing in this case in conflict with
the doctrine now declared, unless it be the inquiry as to
how often the witness had been in jail.    In Lewis v.
Com. (19 R., 1141) (42 S. W., 1127), it was held to be error to
prove by the clerk that a witness for the defence was in-
dicted as an accessory to the crime, for which the defendant
was on trial. It would seem that such testimony was admis-
sible if the question had been asked the accused upon

cross-examination, and that, if it had been answered in the negative, it was material, as showing bias, and might have been contradicted by the production of the indictment; for there would seem to be no good reason for denying the Commonwealth the right, which undoubtedly belongs to the defense in such a case, of showing bias by reason of the existence of an accusation of complicity in the crime for which the accused was on trial. But, be that as it may, the case does not touch the question now under consideration. In Leslie v. Com. (19 R., 1202), 42 S. W., 1095, questions were asked of the accused as to whether he had not been arrested and tried for carrying concealed weapons, and if he had not been arrested for discharging firearms in a named place; and it was held that section 597, applied, and that the permission of the questions, was prejudicial error. It was remarked in that opinion that the section of the Code did not seem to have been cited or considered in the Roberts case. In Baker v. Com. (20 R., 1778) 50 S. W., 54, it was held competent, as showing a motive for the killing for which the accused was on trial, to show upon cross-examination that he had been indicted for other offenses at the instance of the deceased; citing the case of Martin v. Com., 93 Ky., 193 (14 R., 95), 19 S. W., 580. But it was held to be prejudicial error, under section 597 of the Code, to interrogate him with regard to other indictments. In Parker v. Com. (21 R., 407) 51 S. W., 573, the defendant on trial for murder was, against his objection, interrogated as to whether he had been indicted for any offense, and forced to disclose that he had been indicted for carrying a pistol and for shooting from ambush. In an opinion by Judge Hobson it was held that, though the jury were cautioned not to consider the statement, except in so far as it might affect the defendant's credibility as a

Commonwealth v. Welch.

witness, this was prejudicial error, under the Code pro-
vision. Said Judge Hobson, referring to the cases of Les-
lie v. Commonwealth and Baker v. Commonwealth, supra:
"It was hard to conceive how an indictment against the
accused for carrying a concealed deadly weapon or shooting
from ambush could have thrown light on his truthfulness,
and we are satisfied the questions were not asked for this
purpose. Section 597 of the Civil Code of Practice pro-
vides that a witness may be impeached by evidence that
his general reputation for untruthfulness or immorality
renders him unworthy of belief, or by evidence showing
that he has made statements different from his present
testimony; but 'not by evidence of particular wrongful acts,
except that it may be shown by the examination of a wit-
ness or record of a judgment that he has been convicted of
a felony.' The defendant in a criminal case, when offered
as a witness, stands on precisely the same ground as any
other witness, and is equally within the protection of this
salutary statute." In Pennington v. Commonwealth (21 R.,
543) (51 S. W., 818), the defendant on trial for murder was
asked concerning a number of indictments against him in
various counties, and also was compelled to give the details of
his escape from jail and his forcible taking of a gun from
the possession of another. Said Chief Justice Hazelrigg, de-
livering the opinion of the court:    "Our statute provides
(section 597, Civil Code Practice) that a witness may not
be impeached by 'evidence of particular wrongful acts, ex-
cept that it may be shown by the examination of a witness
or record, of a judgment that he had been convicted of fel-
ony.' It follows that the evidence quoted was incompetent,
and from its nature it was presumably prejudicial. Such
has been the repeated rulings of this and other courts.

Baker v. Com. (20 R., 1778) (50 S. W., 54); Martin v. Com.,
supra; Leslie v. Com., supra; Saylor v. Com., supra; 2 Rob-
ertson, Ky. Cr. Law & Prac., section 979 Commander v.
State, 60 Ala., 1; Pinckord v. State, 13 Tex. App., 478." We,
therefore, see that in four cases—those of Leslie, Baker,
Parker and Pennington—it has been distinctly held that a
defendant in a criminal case, when on the witness stand in
his own behalf, was, like any other witness, "within the pro-
tection of this salutary statute." It may be said that most
of the questions under consideration in those cases were
within the doctrine of the general rule that mere accusations,
even when made by indictment, are not admissible to injure
the credibility of a witness, because, notwithstanding the
accusation, the presumption of innocence exists in his fa-
vor, and such evidence is introduced, not for the purpose
of showing the witness was unjustly accused, but to cre-
ate the impression on the minds of the jury that he is guilty.
But, as the cases on the admissibility of questions with re-
gard to indictments and accusations against witnesses are
not uniform, this court, in the four cases referred to, based
the exclusion of the questions upon the statute, as apply-
ing not only to collateral impeachment, but to disparage-
ment by cross-examination. It may be added that two re-
cent cases—Ashcraft v. Com., supra, and Johnson v. Com.,
supra—have been decided upon the authority of the four
cases above mentioned. In Howard v. Com. (110 Ky., 356)
(22 R., 1845) (61 S. W., 756), the question was the same
as that decided in the opinion by Judge Paynter in the
Saylor case, supra, namely the right of a defendant on the
witness stand in his own behalf to the protection of the
constitutional provision that he shall "not be compelled
to give evidence against himself," and has no application

to the question considered here. In our opinion, the statute is a salutary one, and, within the limitations herein stated, applies to cross-examination. The motion of the attorney-general is overruled.

Whole court sitting.

Chief Justice Paynter and Judge Hobson dissent.

# DECISIONS

# Court of Appeals of Kentucky.

## SEPTEMBER TERM, 1901.