## LESUEUR v. THE STATE OF INDIANA.

[No. 21,755. Filed May 23, 1911. Rehearing denied and opinion modified November 15, 1911.]

1. CRIMINAL LAW.—*Plea in Abatement.—Indictment.—Irregularities.*—A plea in abatement to a prosecution by indictment alleging that the judge of a city court of this State unlawfully and without jurisdiction issued his warrant for the arrest of defendant, who was in a sister state, that defendant was a resident of such sister state, and believing the warrant to be legal, and without knowledge of his legal rights, voluntarily returned to this State, that such judge was the attorney for the prosecuting witness, that he appointed a special judge and vacated the bench, that he and the prosecuting attorney, without sufficient evidence, procured an indictment against defendant and that his custody is unlawful, is insufficient. p. 451.

2. EXTRADITION.—*Interstate Rendition.*—*Claiming Benefit of Laws for.*—A citizen of a sister state cannot claim the benefits of the laws of this State on the subject of interstate rendition, where he voluntarily, though without knowledge of his legal rights, returned to this State to answer a criminal charge. p. 452.

3. JUDGES.—*Practicing Law.*—*Public Policy.*—Whether the judge of a city court shall be permitted to practice law is a question of public policy to be determined by the legislature and not by the courts. p. 452.

4. BIGAMY.—*Prior Marriages.*—*Divorce.*—*Evidence.*—*Question for Jury.*—Evidence that defendant had been married twice before, that his first wife had procured a divorce and that his second wife had written to him ten days prior to his third marriage that she had obtained a divorce sustains a verdict of guilty, where there was evidence that he had made false statements in securing his third license and in the marriage contract, where he did not use due care in ascertaining whether his second wife had obtained a divorce and where there was evidence that no such divorce had been obtained, the use of due care in ascertaining such fact being a question for the jury. p. 453.

5. BIGAMY.—*Divorce.*—*Burden of Proof.*—*Presumptions.*—In a prosecution for bigamy the burden of proving that defendant was divorced from his former wife is upon defendant, there being no presumption that a divorce had been obtained. pp. 455, 460.

6. CRIMINAL LAW.—*Instructions.*—*Written.*—*Oral.*—*Waiver.*—It constitutes reversible error for the trial judge to overrule defendant's request, made prior to the beginning of the argument to the jury, to give written instructions; but where the jury requests further instructions, and with defendant's consent, the instructions were read to the jury by the shorthand reporter, he waives the right of insisting upon such error. p. 455.

7. CRIMINAL LAW.—*Written Instructions.*—*What are.*—Oral instructions taken down by the court reporter do not constitute written instructions. p. 455.

8. CRIMINAL LAW.—*Jury.*—*Fact and Law.*—*Instructions.*—In a criminal case, it is not erroneous to refuse an instruction that the jury is "the judge of the law and the evidence," where the judge has instructed that the jury is "the exclusive and sole" judge of "what facts have been proved," that it "may also determine the law" for itself, that it does not have the "right to set aside the law," and to make its own law, and that it must "determine the law as it is enacted by the legislature * * * and interpreted by the higher courts of record." p. 456.

9. CRIMINAL LAW.—*Instructions.*—*Duplication.*—It is not erroneous to refuse to duplicate instructions. pp. 456, 457.

10. CRIMINAL LAW.—*Presumptions of Innocence.—Instructions.*— Instructions coupled with some specific question, or phase of the case, that the presumption of innocence attaches to the accused until the close of the trial, were correctly refused, where the jury had been instructed that "the defendant is presumed to be innocent until the contrary is proved," that "where there is a reasonable doubt as to * * * his guilt * * * he must be acquitted" and that "if there is a reasonable doubt" in the minds of the jury, or any one thereof, he cannot be found guilty while such doubt remains, but must be found not guilty. p. 457.

11. CRIMINAL LAW.—*Instructions Requested.—Duty.*—Instructions requested should be unobjectionable in the form requested. p. 457.

12. CRIMINAL LAW.—*Instructions.—Credibility of Witnesses.*—It is not proper in a criminal case to single out witnesses and give instructions as to their credibility. p. 457.

13. CRIMINAL LAW. — *Evidence. — Moral Character.*—Where the moral character of the prosecuting witness in a criminal case is attacked, she may, on rebuttal, call witnesses to sustain it. p. 458.

14. CRIMINAL LAW.—*Reinstructing the Jury.—Method.*—Where the court has failed, in a criminal case, to instruct the jury on any question, the proper practice requires that an instruction be drawn covering the point and that the jury be recalled and reinstructed. p. 459.

15. CRIMINAL LAW.—*Appeal.—Right Result.—Bigamy.*—Where the defendant failed to show a divorce from his previous wife and the evidence is conclusive as to his guilt, the Supreme Court will not reverse the judgment for insubstantial errors. p. 461.

16. CRIMINAL LAW.—*Instructions.—Exceptions to.—Practice.*—Exceptions to instructions in a criminal case cannot be reserved by being dated and signed by the judge, or by the defendant or his attorneys. p. 461.

From Pike Circuit Court; *John L. Bretz*, Judge.

Prosecution by The State of Indiana against James E. Lesueur. From a judgment of conviction, defendant appeals. *Affirmed.*

*Lindsey & Bock* and *J. L. Sumner*, for appellant.

*Thomas M. Honan*, Attorney-General, *H. W. Carpenter*, *O. R. Luhring*, *W. B. Le Masters*, *Durre & Curry*, *E. M. White*, *J. E. McCullough* and *Thos. H. Branaman*, for the State.

MYERS, J.—Appellant was indicted in Vanderburgh county, from which a change of venue was taken to Pike county, where he was convicted and sentenced for bigamy.

The first alleged error assigned is in sustaining a demurrer to his plea in abatement. The substance of that plea was that defendant is now, and has been continuously for the past five years, a resident of the State of Missouri, and never was a resident of the State of Indiana; that after his marriage to the prosecuting witness she filed an affidavit in the city court of Evansville, Vanderburgh county, Indiana, charging him with bigamy, procured a warrant for his arrest, and he was arrested in the city of St. Louis, Missouri, and the officer from the city court of Evansville presented this warrant to him, and demanded that he return to the State of Indiana to answer the charge, and that in ignorance of his rights, and believing the proceeding legal, he returned to the city of Evansville with the officer; that he was bound over to the grand jury, and, while in jail, sued out a writ of *habeas corpus,* but before the case could be heard he was indicted by the grand jury of Vanderburgh county.

The plea presents the fact that the judge of the Evansville city court was the attorney for the prosecuting witness to procure an annulment of the marriage; that he prepared and issued the warrant for the arrest of appellant, appointed a special judge to hear the case, and then presented the case before the special judge, by whom appellant was bound over to the grand jury; that upon the request of said judge and of the prosecuting attorney the indictment of appellant was procured without sufficient evidence to warrant it. This plea is based upon alleged fraud of these officers in procuring the return of appellant, owing to his lack of knowledge that he was not required to return in obedience to the warrant. It is manifest that these facts if true could not abate the indictment. This was an action by the State, and appellant had come voluntarily within its jurisdiction. His

allegation that the indictment was returned upon insufficient evidence cannot be interposed to abate the indictment. *State* v. *Comer* (1902), 157 Ind. 611, and cases cited; *Stewart* v. *State* (1865), 24 Ind. 142; *Creek* v. *State* (1865), 24 Ind. 151; *State* v. *Fasset* (1844), 16 Conn. 457; *State* y. *Fowler* (1879), 52 Iowa 103, 2 N. W. 983.

If he is guilty of the offense of bigamy, it was an offense committed in Indiana, and against the State of Indiana.

2. The plea alleged that he was not a resident or citizen of the State of Indiana. He could not, therefore, avail himself of the laws of this State upon the subject of extradition of fugitives from justice, and we are not informed as to what the laws of Missouri were upon the subject, or whether there were any applicable to the subject as applied to a crime alleged to have been committed in this State. But assuming that there were statutes of the State of Missouri to which he might have appealed, his pleading shows that he returned to the State of Indiana voluntarily, though under a misapprehension of his rights, if he had any, to be heard in Missouri, and because of his ignorance of the law.

It is urged that the method employed to obtain possession of his person was against public policy, and that it is

3. against public policy that one who is a city judge shall practice law, and that the facts alleged show a conspiracy, and an unlawful act in procuring his return. Whether the practice of law by city judges should or should not be permitted is a subject for legislative intervention, and is not the concern of the courts. Whether the alleged acts by which his return was procured were wrongful upon the part of the participants, or would authorize an action for damages, they clearly cannot be claimed to abate the indictment. The demurrer was properly sustained.

The next alleged error is in overruling the motion for a new trial, and primarily that the verdict is not sustained by

sufficient evidence.   The evidence shows that appel-
4.   lant was married in Carroll county, Missouri, on May
1, 1899, to a Miss Wallace; that he was then about
twenty-one years of age, and she was about eighteen years
of age; that they lived together until November, 1906; that
he was twenty-seven years of age at the time of the trial;
that by the first marriage he had one child; that his first
wife procured a divorce from him; that he was again mar-
ried on July 10, 1909, to Rowena Rogers in Omaha, Ne-
braska, and left her after a few days; that on February 26,
1910, he was married to Jeanne H. Kelley, in Vanderburgh
county, Indiana; that his verified application for a mar-
riage license stated that this was his first marriage, that
Jeanne H. Kelley was twenty-one years of age, and that
this was her first marriage; that he stated to the minister
who performed the marriage ceremony that he had never
been married; that he first met Jeanne H. Kelley February
3, 1910, and they were married on February 26, 1910; that
they were employed in the same office, she as a stenographer,
and he as a cartoonist; that he represented to the prosecut-
ing witness that he was a bachelor; that soon after the mar-
riage they went to St. Louis; that she returned to her
father on March 28, 1910, and instituted an action for a
divorce April 28, 1910; that he claimed to have received a
letter from Rowena Rogers ten days or two weeks before
he married Jeanne H. Kelley, in which she stated that she
had gotten a divorce, and his reliance and defense is based
upon that claim of fact.   He claims to have written to her
inquiring whether she had gotten a divorce, and that he
believed what she said and made no further inquiry.   One
person testified to having seen a letter such as appellee
claimed to have received, but the evidence was of such a
character that the jury may well have disbelieved it.   It
then resolves itself into this proposition:   Granting that
he received such a letter, was he justified in relying upon

it? In the case of *Squire* v. *State* (1874), 46 Ind. 459, an instruction asked by the defendant stated "that if the jury believe from all the evidence in the case that defendant married the second time in the honest belief that his former wife had been divorced from him, it should find him not guilty," and it was held not error to refuse it; and it was also held that if the court had been asked so to do, it should have charged the jury that if it believed from the evidence that defendant had been informed that his wife had been divorced, and that he had used due care and made due inquiry to ascertain the truth, considering the circumstances, and had reason to believe, and did believe at the time of his second marriage, that his former wife had been divorced from him, it should find him not guilty. In that case defendant had been separated from the former wife two years, and had received letters from his parents and his brothers informing him that his wife had procured a divorce from him, and, relying upon that information, had remarried. Appellant's claim is not so well founded in this case as was defendant's claim in that case.

In this case appellant admits that the relations between himself and his last wife were strained, and that he had seen her as late as November, 1909, and knew she had not then procured a divorce. He knew that she lived in Douglass county and in Omaha, Nebraska, where she had relatives, whom he knew. He also knew where other relatives lived, but he made no inquiry whatever except of his wife. He claims to have received the information within ten days or two weeks of the marriage for which he was prosecuted. It is not sufficient that he should merely have had a belief upon the subject; he must show such care and inquiry as would justify the belief under all the evidence and circumstances in evidence, and whether he did so was a question for the jury.

It is next contended that the evidence is not sufficient, for the reason that it was not shown that appellant had not

been divorced from the former wife. This proposi-
5. tion has been held adversely to appellant. *Fletcher*
v. *State* (1907), 169 Ind. 77, 124 Am. St. 219.

The presumptions which obtain in civil cases with re-
spect to marriage entered into according to the forms of law,
that there is no impediment to such marriage where the
rights or the happiness of the innocent party to the sup-
posed marriage, or the legitimacy of offspring of the mar-
riage, is involved in collateral proceedings, find no place
in a prosecution for bigamy. *Fletcher* v. *State, supra.*

Before the commencement of the argument to the jury,
appellant requested the court to give all instructions to the
jury in writing. This was not done, and the court
6. instructed the jury orally, and the instructions were
taken in shorthand by the court reporter. If the
case stood upon this condition of the record, the judgment
would have to be reversed, as a positive right of defendant
would have been denied him. §2136, subd. 5, Burns 1908,
Acts 1905 p. 584, §260; *Littell* v. *State* (1893), 133 Ind. 577;
*Stephenson* v. *State* (1887), 110 Ind. 358, 59 Am. Rep. 216;
*Smurr* v. *State* (1883), 88 Ind. 504. But after the jury had
retired, and had been some four hours in deliberation, it
requested further instructions. By consent of appel-
7. lant it was brought in, and the instructions were read
by the reporter. The taking down by the reporter of
the oral instructions did not constitute them written instruc-
tions. *Shafer* v. *Stinson* (1881), 76 Ind. 374.

The right to written instructions might be waived, and
when appellant consented to the reinstruction of the
6. jury in the manner shown, he waived the right to
written instructions. *Voght* v. *State* (1896), 145
Ind. 12.

The court was asked to instruct the jury that it was "the
judge of the law and the evidence." This request was re-
fused, and the jury was given the following instruction:

"You are the exclusive and sole judges of what facts
8. have been proved. * * * You may also determine
the law for yourselves, and by that is not meant that
you have a right to set aside the law and make your own law.
You determine the law as it is enacted by the legislature of
this State, and considered and interpreted by the higher
courts of record, and in that way you have a right to de-
termine the law for yourselves, but not to make your own
law." Each instruction given was coupled with the usual
instructions in regard to the credibility of witnesses, etc.
The instruction just quoted is no more than advisory to the
jury as to the manner of determining the law. It is charged
with determining the law as applied to a particular case,
that is, what the law is upon a specific point or ·question.
The law exists, or it does not. Innocence or guilt depends
upon what the law is, upon a given state of facts. How is
a jury to determine what the law is? It must be from the
statute and the judicial determinations—not from the
statute alone, but the substantive law—and the jury is given
no more than the rules to guide it in determining what the
law is. It must be true that it cannot make the law, but by
both the Constitution (Art. 1, §19) and §2136, *supra*, it has
the right to determine it. The instruction was not errone-
ous, and the province of the jury was not invaded. Said
instructions fairly covered the question presented by ap-
pellant's second requested instruction. *Anderson* v. *State*
(1886), 104 Ind. 467; *Hudelson* v. *State* (1884), 94 Ind. 426,
48 Am. Rep. 171; *Nuzum* v. *State* (1883), 88 Ind. 599; *Pow-
ers* v. *State* (1882), 87 Ind. 144; *Rubricht* v. *State* (1859),
11 Ind. 540; *Williams* v. *State* (1858), 10 Ind. 503.

Appellant's requested instructions upon the ques-
9. tion of reasonable doubt were fully covered by the
instructions given, and are quite as favorable to ap-
pellant as he could ask.

Appellant requested five separate instructions, to the

point that the presumption of innocence attaches to a defendant charged with crime step by step until the close of the trial, but in each instance was coupled with some specific question or phase of the case. The court instructed the jury that "the defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt as to whether his guilt is satisfactorily shown, he must be acquitted," and that "if there is a reasonable doubt in your minds, or in the mind of any one of you, as to his guilt, you cannot find him guilty as long as that remains, but, on the contrary, you must find him not guilty." The instructions requested gave undue prominence to the question of presumptions with respect to specific matters, and while appellant would have been entitled to an instruction which presented the question of the presumption attaching to a defendant from the beginning to the close of a trial, and step by step in its progress, he is not entitled to have it repeated with respect to specific matters. It must be unobjectionable in the form he requested it. *Goodwin* v. *State* (1884), 96 Ind. 550.

Appellant requested two instructions, which were refused, upon the subject of reasonable doubt, as to whether appellant exercised due care to ascertain whether his former marriage had been dissolved, and whether he honestly believed that it had been. The points were fully covered by an instruction given, and by a full instruction upon the subject of reasonable doubt.

Two witnesses were brought from Omaha, Nebraska, to testify that the former wife of appellant was alive, and appellant testified that he had had a letter from her within ten days or two weeks of his last marriage. This was the only fact to which these witnesses were called to testify. It could not have been known to the State that appellant would even testify, or that he would testify that the former wife was still alive, but he tendered instruc-

tions upon the subject of the care the jury should take in weighing the testimony of these particular witnesses. He was not harmed by the refusal to give them, and, in fact, predicates his defense on the fact that ten days before his marriage he had a letter from her, upon the faith of which he married. The question of the credibility of witnesses was fully covered by another instruction. It is insisted, however, that he was entitled to an instruction singling out these witnesses, and the reasons for extra caution in weighing their testimony. It is not proper to single out certain of the witnesses in a case and to attempt an analysis of their testimony affecting the question of their credibility. Appellant would certainly justly complain if the testimony of his own witnesses was subjected to that rule. *McIntosh* v. *State* (1898), 151 Ind. 251; *Deal* v. *State* (1895), 140 Ind. 354. The specific objection is based upon the cases of *Parker* v. *State* (1894), 136 Ind. 284, *Fleming* v. *State* (1894), 136 Ind. 149, and *Carpenter* v. *State* (1873), 43 Ind. 371.

It will be noted, however, that in not one of those cases was this question presented, but in each was involved a specific question in controversy, that went to the very marrow of the case, viz.: in two cases, an alibi, and in the third, the question of self-defense, and in each it was held that a defendant is entitled to a specific charge as to the law upon evidence in the case, and especially upon a controverted question upon which innocence or guilt depends, but that is very far from the question here presented.

Appellant sought to attack the moral character of the prosecuting witness, and on rebuttal she was allowed to call witnesses as to her moral character. There was 13. no error in this. *Commonwealth* v. *Gray* (1880), 129 Mass. 474, 37 Am. Rep. 378; *Warren* v. *Commonwealth* (1896), 99 Ky. 370, 35 S. W. 1028.

After the jury had deliberated four hours, it requested further instructions, and it was in this connection that ap-

pellant consented that the instructions as originally given by the court and taken down in shorthand be read to the jury. At the close of their reading one of the jurors said: "I do not know whether it would be a point of evidence—the question bothering us is, Was it necessary for the State to bring a deposition from this Rowena Rogers [the former wife] to this court, and was it necessary for the State to prove that the marriage of this defendant to Rowena Rogers was not annulled by divorce prior to his marriage to this Kelley girl?" The court, in answer to this inquiry, made the following statement to the jury: "On the law question you inquired about, it is incumbent on the State to show that the defendant was married to Rowena Rogers, and that she was still living at the time of the marriage to Jeanne H. Kelley; it is then incumbent on the defendant to show a divorce from his former wife—Rowena Rogers—if you find he was married to her. What is the other point?" The juror answered: "That is all." Appellant and his attorneys were present and made no objection to the court's answering the inquiry. There had been no specific instruction given upon the direct question asked. To have reread the instructions, therefore, would not have enlightened the jury upon that question. It was a question of law on which the jury was entitled to be instructed. The practice here followed is far from commendable, and is condemned. The court should have drawn an instruction covering the point, and reinstructed the jury, otherwise a defendant's rights might be seriously prejudiced without opportunity for redress, if the statements of the court are not preserved.

The answer or instruction is treated as instruction thirteen in order. The form of the exception, as shown by the alleged bill of exceptions is as follows: "And defendant at the time said thirteenth oral instruction was given to the jury excepted to the action of the court in giving it, and after said thirteenth oral instruction so given to the jury

was transcribed by the reporter, defendant entered on the margin of said instruction his written exception to the action of the court in giving to the jury said instruction, which written exception was dated and signed by the attorneys for the defendant and by the judge of said court.'' It is then recited that the thirteenth oral instruction was correctly transcribed, and was signed by the judge, and filed with the clerk, and said instruction, and the twelve preceding instructions given, ''and the exceptions taken by the defendant to each of them, and written on the margin thereof, and dated and signed by the judge, and the attorneys, for the defendant, * * * are in words and figures following.'' Here followed the thirteen instructions seriatim, on the margin of each of which is the statement ''Given by the court of its own motion and excepted to at the time by the defendant on July 22, 1910. John L. Bretz, Judge. Lindsey & Bock, Attorneys for defendant.'' It is then recited that these instructions, from one to thirteen inclusive, were all the instructions given to the jury. We were at first of the opinion that this does not show an exception to the substance of the instruction, and so treated it, but in that there may be room for doubt. There had been no specific instruction as to who had the burden of proving a divorce, but the jury had been properly instructed upon the question of the duty of the defendant to make such reasonable inquiry and exercise such care as would reasonably lead one to believe that a divorce had been granted. Taking the inquiry by the juror and the answer thereto, it seems to have been directed to the proposition of whether the State was required to prove that no divorce had been granted, or whether if divorce was claimed as a defense it should be shown by the defendant. The one proposition is the corollary of the other, that is, the State was not bound to prove the negative, but appellant was required to prove the affirmative. One is the necessary sequence of

the other, and the instruction was a correct statement of the law. *Fletcher* v. *State, supra.*

But if we are in error, both as to the exception and the substance of the thirteenth instruction, appellant could not have been harmed by it, for there is no pretense of a divorce, and the evidence is so overwhelming as to his guilt that we would not be warranted in reversing the judgment, because his substantial rights were not prejudiced. *Musser* v. *State* (1901), 157 Ind. 423; *Stalcup* v. *State* (1896), 146 Ind. 270; *Reed* v. *State* (1895), 141 Ind. 116.

We desire again to point out to the profession that exceptions to instructions in criminal cases cannot be reserved by being dated and signed by the judge, or by the party or attorneys, as done in this case, though the exceptions are otherwise properly reserved by the bill of exceptions. *Stucker* v. *State* (1908), 171 Ind. 441; *Donovan* v. *State* (1908), 170 Ind. 123; *State* v. *Thomson* (1906), 167 Ind. 96; *Hannan* v. *State* (1897), 149 Ind. 81.

The judgment is affirmed.