**James BOLIN, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 21, 1966.

C. B. Upton, Williamsburg, for appellant.

Robert Matthews, Atty. Gen., H. N. McTyeire, Asst. Atty. Gen., for appellee.

PALMORE, Chief Justice.

James Bolin appeals from a judgment sentencing him to 20 years in prison pursuant to a verdict finding him guilty of attempting to rape his 8-year old niece. See KRS 435.080(2).

The grounds relied upon for reversal are that he was prejudiced (1) by improper cross-examination and (2) by the trial court's refusal to permit impeachment of certain prosecution witnesses by evidence that they had made prior inconsistent statements.

The defendant was an unmarried man 37 years of age and had been twice convicted of felony. At the time the crime is alleged to have been committed he had no regular employment and was living with his mother. The cross-examination claimed to have been improper and prejudicial is contained in the following excerpt from the transcript:

Q– "Now, what do you do for a living?"

A– "Well, I work at a sawmill a little bit."

Q– "When was the last job you had?"

A—— "It's been three months ago, I guess."

Q– "What did you do for a living the last three months? Just living there on Ma?"

A– "I stay with Ma."

Q– "Ma feed you?"

A– "Yes."

Q– "Ma clothe you?"

MR. CAYLOR: "Object to that line of testimony. He is merely harassing the witness."

THE COURT: "Overruled. He may go ahead."

Q– "How long did you work in the sawmills?"

A– "I don't know. I worked different times."

Q– "How long has it been since you worked a month straight for anybody?"

A– "Well, I wouldn't know."

Q– "Never have, have you, James?"

A– "Why sure I have."

Q– "Have you ever been married?"

A– "No, I haven't."

Q– "Got any family?"

A– "No, I haven't."

Q– "How much did you work during the 1965 for anybody?"

MR. CAYLOR: "Objection."

THE COURT: "Yes, sustained."

Q– "Were you ever regularly employed as much as two months during the year 1965?"

MR. CAYLOR: "Objection. Your Honor, you ruled on it."

THE COURT: "He may answer."

A– "That's this year. No, sir, I haven't—I swear I don't know."

Q– "You just sort of laid around down there on your mother, didn't you?"

MR. CAYLOR: "Objection."

THE COURT: "Overruled."

A– "(No answer)."

Each of the decisions cited in support of the argument on this point is distinguishable on the facts and in principle. In Owens v. Commonwealth, 207 Ky. 579, 269 S.W. 542 (1925), Hurst v. Commonwealth, 212 Ky. 39, 278 S.W. 166 (1925), Keith v. Commonwealth, Ky., 251 S.W.2d 850 (1952), Cook v. Commonwealth, Ky., 379 S.W.2d 228 (1964), and Warren v. Commonwealth, Ky., 256 S.W.2d 368 (1958), the information elicited was held prejudicial because (among other reasons) it disclosed or tended to show that the defendant was guilty of other crimes. In Shirley v. Commonwealth, Ky., 378 S.W.2d 816 (1964), the possibly prejudicial effect of an unresponsive answer by the prosecuting witness stating that he had seen the defendant at a public park "when he cut a soldier,"

which at least suggested though it did not show the commission of another crime (and was irrelevant in any event), was held to have been cured by an appropriate admonition from the bench. In Alderson v. Commonwealth, 218 Ky. 591, 291 S.W. 1012 (1927), evidence that the defendant had been "run out of the park on other occasions by the park guard" was held inadmissible, but since the conviction was being reversed on other grounds the court did not say whether its admission alone would have been fatal. Even so, the evidence did suggest the possibility of illegal conduct by the defendant, which is not the case with regard to the matter now before us.

■ It is true that Bolin's means of subsistence had no direct bearing on his guilt or innocence of the charge on which he was being tried. It is true also that the jury in any case is likely to be prejudicially affected by knowledge of facts from which it may or will infer that the defendant is a shiftless bum. But prejudicial or no, a certain amount of background information is relevant, proper and admissible. For example, had it been the case that Bolin was a steady, hard-working man and the main support of a widowed mother he would have insisted on the right to prove it, his counsel would have wrung the subject dry, and we would have to say it was all right.

"The witness' *occupation* has always been deemed, from time immemorial, a proper subject of inquiry, usually on his direct examination, sometimes on his cross-examination. Its bearing is multiple; it may bear upon his bias, his interest, or his moral character,[1] or upon other traits; that it is always relevant, is indubitable * * *" 3 Wigmore on Evidence § 949, at 504 (3d ed. 1940).

This very question was discussed at length in Warren v. Commonwealth, 99 Ky. 370, 35 S.W. 1028, 1029, 18 Ky.Law R. 141 (1896), and what was said there is dispositive here.

■ The appellant's remaining contention, that he was denied the right to prove prior contradictory statements by the prosecuting witness and her mother, is not supported by the record. In each instance the prior statements were introduced anyway, despite the court's having sustained an objection the first time the question was asked. The jury had the information.

The judgment is affirmed.

---

1. As pointed out elsewhere in the same treatise, a defendant's character (in a criminal case) "is essentially relevant," though in order to prevent undue prejudice or some other undesirable result, restrictions have been placed on the manner, occasion, and extent of its admissibility in evidence. Cf. 3 Wigmore on Evidence § 52, at 448, 449 (3d ed. 1940).