[S. F. No. 2134.    Department One.—March 26, 1902.]

## CARLOTTA QUACKENBUSH, Appellant, v. ESTHER E. SWORTFIGUER et al., Respondents.

FINDING—APPEAL—EVIDENCE.—A finding of the trial court on a question of fact, as to the existence of a marriage, will not be disturbed on appeal, if there be a substantial conflict in the evidence.

ID.—MARRIAGE—REPUTE—EVIDENCE.—The repute which, with cohabitation, will be proof of marriage, must be uniform and general, and not divided and singular, and cannot be established except by the open, undisguised, and undoubted acts of the parties which are visible to outsiders.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.    J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Denson, Oatman & Denson, Bush Finnell, and A. H. Yordi, for Appellant.

W. W. Foote, and J. J. Lermen, for Respondents.

GAROUTTE, J.—This is an action in equity to annul deeds to certain property made by Thomas M. Quackenbush during his lifetime to his daughter, Esther E. Swortfiguer. The plaintiff claims to have been the wife of Quackenbush, now deceased, at the date of these deeds, and asserts that they were made in fraud of her rights as his wife. The question presented by the appeal is, Was plaintiff the wife of Quackenbush? A pure question of fact is thus presented, and the finding of the trial court upon the issue will not be disturbed if there be substantial conflict in the evidence. As disclosed by the opinion of the trial judge found in the record, the evidence in this case has been carefully sifted and weighed, and under such circumstances great consideration will be given by the appellate court to the conclusion declared by him. This court will not enter into a detailed analysis and consideration of the evidence, but will now content itself with pointing out the salient features of the case.

Taking a broad view of plaintiff's case, its general features are not pleasant to look upon, and they do not strongly impress the court as possessing substantial merit. By this view we find the plaintiff, in the year 1865, carrying on illicit relations with Quackenbush, and also with one Noyes. These relations with Quackenbush continued until December, 1866, when she claims to have entered into a marriage contract with him, evidenced by a writing. This writing she never saw again until about the time the present action was brought—thirty-two years later. She had a child by the man Noyes, the paternity of which she put upon Quackenbush. She claims to have lived with Quackenbush from 1866 until 1879, and during that period her domestic life was rough and turbulent. She then separated from him, and up to the day of his death, eighteen years later, lived upon a mere pittance, furnished by him. During this period of time he was a man of considerable means, lived in the same city, and she never moved a hand or raised her voice to enforce any of her rights as his wedded wife until after his death.

In its special features the case has a double aspect,—1. The marriage contract; and 2. The evidence of marriage, as shown by general repute.

Let us first look at the marriage contract. The signature of both parties is attached, together with the name of the

plaintiff's mother as a witness, and it is in the following words: "This is to say that we are man and wife in the eyes of all people." Plaintiff testified that it was written by Quackenbush upon December 12, 1866, and that their marriage relations began at that time. There was no evidence offered at to the genuineness of the handwriting, either as to the body of the instrument or the signatures. Plaintiff testified that after Quackenbush wrote it he placed it in his coat-pocket, and that she never saw it again until she found it, thirty-two years later, in a trunk in the cellar of her house, between the lids of a book of poetry. From her standpoint of view this writing was evidently of great importance. Yet she never made any inquiry for it during all this time. Neither did she tell a single person such a writing was ever made. Much importance is attached by the trial judge to the peculiar wording of the instrument, and it certainly is an oddity of its kind. Taking into consideration the peculiar history of the instrument, the peculiar wording of it, the fact that it was retained by Quackenbush after he wrote it, thus leaving in doubt the question of an actual delivery and present consent as to its binding force and effect—taking all these things together, in conjunction with the further fact that previous to this time she had been living in meretricious relations with Quackenbush, and the added fact that the credibility of her testimony was a matter demanding the most careful consideration by the trial judge, under the peculiar circumstances of the case, as testified to by her, this court cannot say that a finding of fact, to the effect that there was no marriage, will be set aside as unsupported.

On the second branch of the case, it is insisted that the fact of marriage is established by a long line of witnesses, showing the conduct of this man and woman from the date of the written instrument, May 12, 1866, for a period of thirteen years, extending to 1879, when plaintiff severed all relations with him. This evidence is given by many witnesses and covers many acts of these parties tending to show the existence of the marriage relation between them. Indeed, the evidence is strong in this direction, and if the trial court had found as a fact that these parties were husband and wife, this court might not have disturbed that finding. But upon a question

similar to that which the court is now considering this is not the test by which the contention is to be tried. We are not here concerned as to a conflict of evidence. The evidence may even preponderate in favor of plaintiff on this issue, still the court will be compelled to sustain the finding of fact, if there is a substantial and material conflict in the evidence bearing upon the issue. For, under these circumstances, a conflict of evidence is presented, and that being so, the trial court is the final arbiter.

There was evidence introduced by defendants illustrating the history of the lives of these two people, especially during the thirteen years in which plaintiff claims they were living together as husband and wife, and that evidence antagonizes plaintiff's claim of the existence of the marriage relation between them. It was inconsistent with the soundness of that claim. Indeed, we learn from the mouth of the plaintiff herself that she rented a house by the name of Mrs. Dawson in the year 1866. We learn also, by her own testimony, that after the year 1879 she always was known by, and answered to, the name of Mrs. Dawson. This certainly is strange conduct upon the part of a wife. In addition to these considerations it may be said the law is elementary that "the repute which, with cohabitation, will be proof of marriage, must be uniform and general, and not divided and singular, and cannot be established, except by the open, undisguised, and undoubted acts of the parties which are visible to outsiders." (*White* v. *White*, 82 Cal. 427.) The repute of marriage in this case was divided, and this fact undoubtedly formed an important factor in the mind of the trial court in coming to its conclusion.

It is apparent from the foregoing views that this court cannot say, as matter of law, that the evidence is too weak to support the finding of "no marriage." The evidence bearing upon and surrounding the writing of the instrument cannot be said to do it, and, as we have seen, the evidence of general repute of marriage likewise cannot be said to do it. Uniting the evidence offered upon both branches of the case, still we do not have a case for plaintiff so strong as to justify this court in setting aside a finding of fact declaring against the existence of the marriage relation. For, even

uniting the evidence offered by her bearing upon both branches of her claim, still the evidence of defendants creates a substantial conflict.

For the foregoing reasons the judgment and order are affirmed.

Harrison, J., and Van Dyke, J., concurred.