[Civ. No. 10557.   First Appellate District, Division Two.—October 20, 1937.]

In the Matter of the Estate of JOHN GILL, Deceased. VIOLA COTGIAS, Appellant, v. AUGUSTA BURKETT, Executrix, etc., et al., Respondents; EDITH GILL et al., Interveners and Respondents.

Randal F. Dickey and Dunne & Dunne for Appellant.

M. Mitchell Bourquin and Max Radin for Interveners and Respondents.

SPENCE, Acting P. J.—John Gill died testate in 1933. All of his property was left by his will to Mabel Greer, who was not related to him, but who had acted as his housekeeper for some months prior to his death. Viola Cotgias, the appellant herein, filed a petition for revocation of probate of said will. She alleged therein that she was the daughter of John Gill's predeceased spouse who had died in 1931. Her right to file her petition was based upon the claim that Mary Kellen, her mother, and John Gill were husband and wife at the time of her mother's death, and that John Gill had left property which had been the community property of himself and appellant's mother. (Probate Code, sec. 228.) Respondents, who were sisters of John Gill, had also contested the will and were permitted to intervene and file a complaint in intervention on appellant's contest. The issues were segregated by consent and the issue of whether appellant had such interest as would entitle her to contest the will was tried by the court sitting without a jury. The trial court found that John Gill and Mary Kellen, the mother of appellant, were never husband and wife and thereupon entered judgment dismissing appellant's petition for revocation of probate. It is from this judgment that appellant appeals.

It is the contention of appellant that the evidence

was insufficient to sustain the finding that Mary Kellen was not the wife of John Gill, but we find no merit in this contention.

The burden of proof was upon appellant to prove the marriage of John Gill and Mary Kellen, and she relied solely upon the presumption "that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage". (Code Civ. Proc., sec. 1963, subd. 30.) No direct evidence was offered to prove such marriage. Before proceeding with a discussion of the evidence found in the record, it appears appropriate to examine briefly the history of said subdivision 30 of said section 1963.

It was enacted in 1872 together with section 55 of the Civil Code, which last-mentioned section then permitted a valid marriage to be entered into without solemnization. Said section 55 of the Civil Code was amended in 1895 to require solemnization as prescribed in the code (Stats. 1895, p. 121), but said subdivision 30 of section 1963 of the Code of Civil Procedure has never been amended. The latter was in effect a codification of the common-law rule which permitted proof of marriage by habit and repute (*Estate of Baldwin,* 162 Cal. 471, 488 [123 Pac. 267]; Wigmore on Evidence, 2d ed., secs. 2082 and 2083), and while proof of marriage may still be thus made despite said change in the substantive law requiring solemnization, we are of the opinion that an attempt to prove a marriage in this state solely by such indirect evidence should be carefully scrutinized. It has been indicated that evidence tending to show such habit and repute may be more easily discredited and that it is not as "significant and cogent" in jurisdictions requiring solemnization as in other jurisdictions (Wigmore on Evidence, 2d ed., sec. 2082), and this must be true for any other rule would practically defeat the purpose of the change in the substantive law. But even before such change it was held that the presumption did not arise upon a mere showing that the parties had lived together as man and wife. It was necessary to further show that the parties "by their conduct to each other and to the world thus established a common, uniform and undivided repute that they were married". (*Estate of Baldwin, supra*; see, also, *Quackenbush* v. *Swortfiguer,* 136 Cal. 149 [68 Pac. 590]; *Hinckley* v. *Ayres,* 105 Cal. 357 [38 Pac. 735]; *White*

v. *White*, 82 Cal. 427 [23 Pac. 276, 7 L. R. A. 799].)
We need only decide here that at least an equally strong
showing must be made since the change in the substantive
law and that where such indirect evidence is relied upon
and the showing falls short of the above-mentioned require-
ments, a finding by the trial court that the parties have not
been married cannot be disturbed on appeal upon the ground
that it is not sustained by the evidence.

We now turn to evidence in the present case. The evi-
dence introduced by appellant showed that John Gill and
Mary Kellen had lived together from 1917 until the death of
Mary Kellen in 1931 and an attempt was made to show such
conduct on the part of each of said parties toward the other
and toward the world as to establish the required habit and
repute. There was evidence to show that they were known
to certain tradesmen and to certain other people as husband
and wife; that certain letters were signed ''Mrs. John Gill''
and that certain bills and correspondence were addressed to
her in that manner; that John Gill had executed a deed of
trust in 1929 and that the instrument was also signed by
''Mary E. Gill'' and that she was designated in said deed of
trust as ''his wife''. There was also evidence concerning
some so-called industrial insurance policies taken out upon
the life of ''Mary Kellen'' in which no beneficiary was named.
After her death John Gill collected the sum of $462.80 due
upon said policies and in doing so designated himself as the
husband of the assured.

There was, however, evidence in the case, some elicited from
appellant's witnesses and some elicited from respondents'
witnesses which tended to show that the parties had not ''in
their conduct to each other and to the world established a com-
mon, uniform and undivided repute that they were married'',
which evidence, together with other evidence, tended to indi-
cate that the parties had never been married. We will
briefly summarize some of that evidence.

John Gill had been married to another woman and the
final decree dissolving that marriage was not obtained until
August, 1918. Appellant herself definitely fixed the time
when her mother, Mary Kellen, had told her that she and
John Gill had theretofore been married as the year 1917.
Appellant returned from Fresno in the early part of 1917

and, upon meeting her mother, no mention was made of any marriage. Shortly thereafter appellant called upon her mother at the Sterling Hotel where her mother was then living with John Gill. Her mother then told her that she and John Gill had been married while the appellant was in Fresno and appellant testified that John Gill then "joked it off" and "talked about something else". It is undisputed that the parties were then living at said hotel under the assumed names of Mr. and Mrs. Smith and that they subsequently lived there again under said assumed names. The parties later lived at the Reno Hotel for about four years under the assumed names of Mr. and Mrs. Howard. It was not until the year 1928 or possibly 1929 that the parties moved into a home in Daly City and they there used the names of Mr. and Mrs. John Gill. At one time they had lived for about fifteen months with Mrs. Knopp, one of appellant's witnesses, and she testified that when she attempted to ascertain the date of the anniversary of their supposed marriage, they "just laughed" and said it was none of her business. Another of appellant's witnesses, the daughter of appellant, who was 21 years of age at the time of the trial, testified that she had never heard it suggested that John Gill and Mary Kellen had ever been married. One of respondents' witnesses testified that he visited John Gill at the home in Daly City and that John Gill told him, in Mary Kellen's presence, that she was his housekeeper. Numerous letters signed "Mary Kellen" and dated at various times during the years that the parties lived together were introduced in evidence. Other documentary evidence was introduced, dated during the years the parties lived together and involving insurance policies, real estate transactions and bank accounts, in which the name "Mary Kellen" was used. It appeared that in 1919 and while said parties were living together, a will signed "Mary Kellen" was executed leaving all of her property to appellant and making no mention of John Gill. It was also shown that after her death, the death certificate and death notices were in the name of "Mary Kellen". It further appeared that appellant had caused a tombstone to be erected at her mother's grave and that said tombstone bore the name "Mary Kellen".

Viewing the evidence as a whole, we are of the opinion that the trial court was justified in concluding that it fell far short of showing that said parties "in their conduct to each other and to the world established a common, uniform and undivided repute that they were married", and we are further of the opinion that the finding to the effect that the parties were never married finds support in the evidence.

The judgment is affirmed.

Sturtevant, J., and Goodell, J., *pro tem.*, concurred.