RAYMOND E. GILLUM, JR., V. THE STATE.

No. 21350. Delivered January 15, 1941.

Rehearing Denied February 19, 1941.

The opinion states the case.

*R. B. Hood,* of Weatherford, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Two years in the penitentiary on a charge of bigamy was assessed against Raymond E. Gillum, Jr., by a jury in Parker County.

Appellant's home was in Burnet County, where he was first married and lived with his wife intermittently until something like July of 1938. At this time, after several separations between them, she went to the home of her twin sister in the state of New Mexico where she seems to have resided until the time of the trial. Without having obtained a divorce himself, appellant was married in Parker County on the 27th day of May, 1939, to another girl to whom he did not disclose his marital difficulties or previous experience.

Numerous witnesses from Burnet County, men of prominence and reliability, testified to the good reputation of appellant and his family. His mother said that she saw a letter which the first wife wrote back getting a divorce, but she didn't read it. The father testified that he read a letter to the son to the effect she was getting a divorce from him, his exact language being: "While she was gone I read a letter she wrote my son to the effect she was getting a divorce from him. It seems like he had written her and she wrote him back and told him there was no need of trying to get along and she thought she had better get a divorce and get loose." He made a statement to an attorney in Weatherford on the subject in which he said, "I told him we had a letter from her about her going to get a divorce." Again he says, "This girl wrote my boy in this letter saying she was going to get a divorce."

Appellant's sister testified more definitely on the subject. She was working at Lometa, which is about thirty miles from Burnet. Appellant's wife left and the witness said: "I later got a letter from her from Tucumcari, New Mexico. I don't have that letter * * * I have made a search for that letter, but failed to find it. I told my brother, the defendant, what was in that letter, when I got it from her. She wrote in that letter she was going to get a divorce from my brother; that her brother-in-law was going to furnish her the money for it. * * * I told my brother all about that. They didn't live together any after that."

She gives the date of this letter as about July, 1938. It was

written about two weeks after the writer went to Tucumcari.

Appellant testified on the subject: "While she was out there I wrote her twice. She answered my letter. She wrote me back a letter while out there, but I do not have that letter now. * * * I wrote her and asked her to come back to me and I thought we could make a go of it, and she wrote me back refusing to come back saying we had tried to get along twice and there was no use, and that she was suing for a divorce out there and that it would be granted in a few days. I believe she said it would be about six weeks when it would be granted her. After receiving that letter I believed she would go ahead and get a divorce. * * * I thought maybe she went ahead and got the divorce. I didn't hear anything about it. I had had no experience about getting a divorce before and I just supposed she would go ahead and get one, or do what she wrote me she was intending to do about it. After getting this letter from her I did not ever see or speak to her or anything. I did see her at Burnet after that, but not to talk to her. I never did live with her any more. It was six or seven months or maybe a year after I got that letter from her about getting a divorce before I married this last woman. I don't know exactly how long it was. It was more than six weeks. I got the letter sometime in the summer time. It was that part of the year. I married again in May of last year. That would be seven or eight months after receiving her letter."

If this evidence raises an issue which is a defense in a bigamy case then there are errors in the record which must be considered. If it does not constitute a defense, these errors will become harmless because of the low penalty which the jury assessed.

No representation was made that the wife had secured a divorce. It was only that she was going to do so. No legal papers were ever presented to appellant. The only evidence which he had was of her intention in the matter at a future date and this was of a very little, if any, higher dignity than a rumor. True, it came from the wife. It was in response to a letter asking her to return and live with him and was in the form of an excuse for not doing so. His ignorance of the law which required service of citation will not avail as an excuse for failure to make further inquiry about the matter. He knew her address; he discussed the matter with his father, a mature man, and discussed getting a divorce himself. He understood the necessity for one. The father advised him to let her go ahead as he did not have the money to spend for it. Several months passed and

he recklessly took his own chance of violating a law he evidently knew to exist, and gambled his own liberty as well as the future welfare of an innocent girl whom he married without the trouble of asking if the divorce had been obtained. His act was wanton and he lost.

Chief Justice Green of the Supreme Court of Tennessee, in White v. State, 9 S. W. (2d) 702, lays down a reasonable rule which we think this court should follow, in this language:

"Plaintiff in error made no investigation of the report that his former wife had obtained a divorce, but acted on a mere rumor. No authority would go to the extent of declaring that an honest belief with respect to a matter like this might be rested on rumor. There must be some diligence and bona fide effort to ascertain the truth, before it can be claimed that a conclusion of fact has been reached in good faith."

What diligence and bona fide effort do we find exercised by appellant in this case? What obstacle would he have encountered if he had? The subject was discussed with the father, who apparently did nothing to investigate the facts or advise the son. He wanted the wife, or her relatives, to bear the burden of expense, and now that the victim of his indiscretion, the innocent girl he married in Parker County, to suffer alone the consequences. He has no complaint that the law has decreed otherwise.

The statement from the wife about which appellant testifies hardly rises to the dignity of an ordinary rumor. The doctrine stated may well be applied. The evidence quoted, when given the strongest interpretation, presents no defense. It, therefore, becomes immaterial to consider the charge complained of relating to it.

Further complaint is made about the admission of prejudicial testimony which may, under circumstances, be harmful. However, in view of the penalty assessed by the jury in this case, and our conclusion that no defense was made to the admitted crime, we deem it harmless, and a discussion becomes unnecessary.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

We reached the conclusion as expressed in our original opinion that the evidence did not raise the issue of a mistake of fact, hence the alleged error regarding the instruction on the subject was not discussed.

We advert to the question now in order to say that we do not regard the charge here complained of as being denounced in Coy v. State, 75 Texas Cr. R. 85. In the part of the instruction here complained of, the court was giving the converse, or in other words, the State's side of a mistake of fact issue. The instruction as a whole upon that issue is not subject to criticism.

The motion for rehearing is overruled.