[Crim. No. 2366. First Dist., Div. One. Dec. 17, 1945.]

THE PEOPLE, Respondent, v. FRANCIS VAN WIE, Appellant.

James A. Toner for Appellant.

Robert W. Kenny, Attorney General, David K. Lener and Miriam E. Wolff, Deputies Attorney General, Edmund G.

Brown, District Attorney, and Norman Elkington, Assistant District Attorney, for Respondents.

PETERS, P. J.—After pleas of not guilty and not guilty by reason of insanity defendant was convicted by a jury of three charges of bigamy. This appeal is from the judgment of conviction and from the denial of the motion for a new trial.

Appellant contends that the evidence is insufficient to sustain the judgment because, so it is urged, the State failed to prove that a valid marriage existed at the time of the alleged bigamous marriages.

The information contains three counts charging separate violations of section 281 of the Penal Code. That section provides that: "Every person having a husband or wife living, who marries any other person . . . is guilty of bigamy." The first count alleges that on or about September 24, 1943, the appellant wilfully, knowingly and feloniously married Myrtle Martha Wheeler then "having a lawful wife living." The second count charges, in similar language, a bigamous marriage with Mary J. Bergman entered into on April 8, 1944, while the third count charges that on or about December 12, 1944, appellant entered into a bigamous marriage with Evelyn Brown.

The prosecution proved that in February of 1941, in Verdi, Nevada, appellant entered into a marriage ceremony and thereafter lived with one Sadie Levin. It is contended, however, that the evidence shows that when appellant married Sadie he was already married to another. It is urged, therefore, that the marriage to Sadie was void, and that the State has failed to prove that when appellant entered into the three challenged marriages a valid marriage existed.

These contentions are neither supported by the record nor by the rules of law applicable to such cases. ▮ It is true, of course, that in a bigamy case it is indispensable that the prosecution allege, and prove, that a valid marriage existed at the time of the alleged bigamous marriage. ▮ But the law is equally well settled that the State is not required to select a prior marriage and to rely upon it to its peril. The prior valid marriage may be properly charged in general terms, as was done here, and upon proof of any prior valid marriage the basis has been laid for the bigamy charge. (*People* v. *Priestley*, 17 Cal.App. 171 [118 P. 965]; *People* v. *LaMarr*, 20 Cal.2d 705 [128 P.2d 345].) ▮ Where a former marriage is

proved, there is a rebuttable presumption of its validity, and it is not necessary for the State to show that there were no impediments to it. (See cases collected and commented upon 10 C.J.S. p. 372, § 16.) ▇ Inasmuch as the facts are peculiarly within the knowledge of the defendant, the burden is on him to establish the invalidity of a prior marriage proved by the State. (*People* v. *Huntley*, 93 Cal.App. 504 [269 P. 750].) ▇ The weight to be given to the conflicting presumptions and inferences is for the jury. (*People* v. *Burke*, 43 Cal.App.2d 316 [110 P.2d 685].)

▇ Under these rules, while it is necessary for the prosecution to establish that defendant had a lawful wife living at the time of the alleged bigamous marriages, the burden is on the accused to establish the invalidity of the prior marriage. If he establishes the invalidity of the prior marriage by proving a valid earlier marriage and does not establish that this earlier marriage was dissolved prior to the dates of the alleged bigamous marriages, he is still guilty of bigamy. (*People* v. *LaMarr*, 20 Cal.2d 705 [128 P.2d 345].)

▇ Tested by these standards the record here involved is clearly sufficient. The prosecution produced Sadie Levin, Myrtle Wheeler, Mary Bergman and Evelyn Brown as witnesses. Through them, and through the official records, the prosecution proved that the appellant entered into a ceremonial marriage with Sadie in February, 1941; with Myrtle in September, 1943; with Mary in April, 1944, and with Evelyn in December, 1944. The marriage to Sadie was not dissolved at the time the other three marriages were entered into. Each marriage was followed by cohabitation. It is quite clear that this evidence established a prima facie case that the last three marriages were bigamous. ▇ Appellant does not challenge this conclusion but urges that the prima facie case involving the marriage to Sadie was overcome as a matter of law. Sadie testified that when she married appellant in February, 1941, she knew that appellant had been married before to a woman named Mabel; that he had promised Sadie to divorce Mabel; that prior to her marriage he disappeared for over six weeks, telling her he was going to Reno to get a divorce; that she received from him a newspaper clipping indicating that he had secured a divorce from Mabel; that she subsequently learned that he had spent most of the six weeks in Sacramento; that he assured her that nevertheless he had

secured a divorce from Mabel; that after her marriage to appellant she learned, through the Red Cross, that there was no record of such a divorce; that when she accused appellant of misleading her he admitted that he had not divorced Mabel but assured her that Mabel had died prior to their marriage. She further testified that: "Yes, I had known she [Mabel] was alive." Whether this referred to a time before or after her marriage is not clear from the context. The most reasonable interpretation is that Sadie meant she had known Mabel was alive prior to her marriage to appellant.

This evidence does not establish, as a matter of law, that the marriage to Sadie was invalid. The burden was on appellant to overcome the prima facie case established by the prosecution. To do so it was incumbent upon appellant to prove that the marriage to Mabel was valid. This he did not do. (*People* v. *Spitzer,* 57 Cal.App. 593 [208 P. 181] ; *People* v. *Bisbee,* 134 Cal.App. 181 [25 P.2d 232].) Sadie's statements in regard to her knowledge of the existence of a prior marriage to Mabel certainly did not prove that marriage, as a matter of law, nor did they prove that appellant's marriage to Sadie was void. There is a lack of proof that Mabel was alive when Sadie married appellant.

There is another fallacy in appellant's reasoning. If it be assumed, contrary to the fact, that the evidence established, as a matter of law, the validity of the marriage to Mabel, and the invalidity of the marriage to Sadie, then it was for the jury to find on conflicting presumptions and inferences whether the Mabel marriage was still in existence when he married Myrtle, Mary and Evelyn. Its finding on this issue is conclusive. (*People* v. *Burke,* 43 Cal.App.2d 316 [110 P.2d 685].) Under the rule of the LaMarr case, *supra,* the prosecution cannot be compelled to elect which prior marriage is relied upon as proof of a prior valid marriage. Proof of any prior valid marriage is sufficient whether the evidence is produced by the prosecution or the defense.

It is next urged that the trial court committed prejudicial error in refusing two requested instructions. The first (proposed instruction No. 24) reads as follows: "You are instructed that even the declarations or admissions of a defendant, together with proof of cohabitation and repute, are not sufficient evidence to establish or sustain the charge of bigamy without some further proof of an actual marriage." This in-

struction was refused on the ground that it was not a correct statement of the law.

There is language in *People* v. *Le Doux,* 155 Cal. 535 [102 P. 517], and in *People* v. *Spitzer,* 57 Cal.App. 593 [208 P. 181], that supports this instruction. The holding in both cases was clearly dictum. The Le Doux case has been criticized. (See 4 Cal.Jur. p. 345, § 10, fn. 6.) On principle the instruction would seem to be incorrect. The great weight of authority in other jurisdictions is that a marriage, in a bigamy case, may be proved by circumstantial evidence. (See cases collected 10 C.J.S. p. 377, § 21.) Section 1106 of the Penal Code provides that: ''Upon a trial for bigamy, it is not necessary to prove either of the marriages by the register, certificate, or other record evidence thereof, but the same may be proved by such evidence as is admissible to prove a marriage in other cases. . . .'' In other cases, of course, marriage may be proved by cohabitation and repute. (See cases collected 4 Cal.Jur. p. 345, § 10, fn 6.) There is direct authority that in a bigamy case evidence of cohabitation and repute coupled with admissions of marriage, is sufficient to sustain a finding of marriage. (*People* v. *Beevers,* 99 Cal. 286 [33 P. 844] ; see, also, *People* v. *Stokes,* 71 Cal. 263 [12 P. 71] ; *People* v. *DuFault,* 1 Cal.App. 2d 105 [36 P.2d 196].) For these reasons the language in the Le Doux and Spitzer cases, *supra,* must be interpreted to mean, at most, that the evidence of the type stated in the proposed instruction does not prove a marriage as a matter of law. It would thus appear that the proposed instruction contained an incorrect statement of the law and was properly refused on that ground.

Moreover, even if the proposed instruction contained a correct statement of the law, it was not a proper instruction under the facts of this case. The four marriages involved were not proved by admissions of the defendant coupled with evidence of cohabitation and repute. The marriages were proved by the testimony of the four women involved, by the marriage certificates, by the affidavits of the appellant on the applications for the marriage licenses in three of the marriages, by the testimony of the minister who performed the marriage to Mary Bergman, and by the testimony of the witnesses to the marriage to Evelyn Brown. Obviously, the proposed instruction, even if correct, was not adapted to the evidence here involved.

█ Proposed instruction No. 25 was also refused. It provides: "You are instructed that if the first marriage alleged in an information charging bigamy be shown to have been void because of a previous valid existing marriage, the defendant cannot be convicted thereunder." The language of this instruction was taken from *People* v. *Spitzer*, 57 Cal.App. 593 [208 P. 181]. This language was criticized as dictum and expressly overruled in *People* v. *LaMarr*, 20 Cal.2d 705, 711 [128 P.2d 345].

Moreover, even if the instruction stated a correct principle, which it does not, it would be inapplicable here. In the Spitzer and LaMarr cases, *supra*, the indictments set forth specifically the valid marriage relied upon. In the LaMarr case it was held that, where defendant proved a valid marriage existed at the time the marriage charged by the prosecution as the prior valid marriage was entered into, nevertheless proof of any lawful marriage existing at the time of the alleged bigamous marriage is sufficient. In the instant case there was no specific valid marriage set forth in the information, and, as already pointed out, such allegation was unnecessary. Obviously, even if the rule stated in the Spitzer case were good law and the defendant could properly urge a variance, it is entirely inapplicable where no specific prior marriage is relied upon. It should be mentioned that the jury was properly instructed that "the existence of a valid first marriage is an essential element in the crime of bigamy."

█ Appellant objects to the following instruction given by the court: "You are instructed that if the People have proved beyond a reasonable doubt and to a moral certainty that Francis Van Wie went through a marriage ceremony with Sadie Levin that was regular in form on February 21st, 1941, at Verdi, Nevada, it is no defense on the part of Mr. Van Wie to contend or prove that he was at that time already married to another."

Although this instruction may not be as complete as might be desired, it states a correct principle of law as far as it goes, and, under the evidence here involved, was correct. The only way in which a marriage earlier to the Levin marriage could serve as a defense would be by proof that such earlier marriage was valid when entered into, was valid and existing at the time of the Levin marriage, but had been dissolved prior to the date of the three bigamous marriages. If it be assumed that a valid marriage to Mabel was proved, and the failure in this

regard has already been commented upon, the only evidence of its termination was Sadie's hearsay testimony that appellant had told her first that he was divorced from Mabel and that later he told her Mabel had died, and the hearsay testimony of the other wives that appellant had told them before their respective marriages that he was a widower. That testimony was not necessarily inconsistent with the validity of the Sadie Levin marriage because that testimony was to the effect that the death or divorce took place prior to the Levin marriage. Other than this hearsay testimony the defendant did not offer any evidence to prove that Mabel was dead at the time of the alleged bigamous marriages but not dead at the time of the Levin marriage, nor, in fact, did he ever prove the validity of the marriage to Mabel. Under such circumstances he was not prejudiced by a failure to give a more complete instruction as to the effect of proof of a marriage to Mabel and its termination prior to the dates of the three alleged bigamous marriages.

Appellant objects to the court's comments on the evidence both on the trial of the guilt issue and on the trial of the insanity issue. The court, at the conclusion of the first half of bifurcated trial required under our law, fairly summarized the evidence by stating that the People had introduced evidence that appellant went through four marriage ceremonies, that appellant had introduced no evidence in contradiction, and then added: "If you believe beyond a reasonable doubt and to a moral certainty that the defendant married the four ladies referred to in the evidence under the circumstances set forth in the evidence, then it will be your duty to convict on all three counts in the information." It is not contended that the summary of the evidence was biased or that it was not a fair statement of the evidence, but it is contended that the quoted sentence amounted to a judicial directive to convict, and that the court should have made it clear that this "directive" was advisory only. At the beginning of the instructions the court had informed the jury that in giving instructions it was not expressing any opinion upon the weight of the evidence, credibility of any witnesses or "that any alleged fact in the case is or is not proved," and that the weight and credibility of the evidence were entirely within the province of the jury. Although the form of the comment here is not to be commended it could not possibly have misled the jury or prejudiced the appellant.

 Error is also claimed in certain comments on the evidence made at the conclusion of the insanity trial. The court then stated:

"Now, pursuant to the State Constitution, the Court desires to make the following comments on the evidence to the jury:

"There is evidence before you in the form of testimony of the defendant given from the witness stand here to the effect that the defendant did know the difference between right and wrong. The defendant testified that he married Edna Eastman only because he thought he was free to marry her. The defendant testified that he was told that he was divorced from Clara Heise.

"Then there is testimony in the case given by the three ladies on the witness stand to the effect that the defendant had told them not to recognize him at certain times and places because of the fact that he was a member of the FBI and on official business. These three ladies likewise testified that the defendant had told them that he had been married to a Mabel, but that she was dead.

"The Court desires further to comment on the information that the defendant gave when he filled out the various applications for marriage licenses. These applications and the information thereon indicated that the defendant's previous wife was either dead or divorced.

"The Court further desires to comment on the qualifications of the medical witnesses in this case. They are experts of the highest qualifications, and they were appointed by the Court, they are paid by the State, and they are absolutely under no compulsion to give any particular opinion on this sort of an issue.

"There is ample evidence in this record to show that the defendant at the time of the commission of these three bigamies was perfectly sane.

"However, the Court further instructs the jury they are the sole judges of the facts and the weight of the evidence." The court had previously instructed that the jury could disregard expert testimony if it should be found to be unreasonable.

Appellant urges that the description of the experts and the statement that there was "ample evidence" to find the appellant "perfectly sane" went beyond the limits of fair comment and denied him a fair trial.

The form of this comment cannot be approved, but, under the circumstances here involved, such comment, even if erroneous, could not possibly have been prejudicial.

The only experts who testified, two in number, were appointed by the court and called by the prosecution. The only evidence produced by appellant was his own testimony. The two experts testified appellant had a psychopathic personality but that he was both medically and legally sane. They were most positive on this point, and indeed, the testimony of defendant himself demonstrated that he was legally sane. The qualifications of the experts were established without contradiction, it appears from the record that they were appointed by the court, and the court could take judicial notice that they were paid by the State. The summation of the evidence was fair and impartial. It is undoubtedly true that the court should not have stated that there was ample evidence on the issue, since the questions of credibility and sufficiency are for the jury. But immediately thereafter the court told the jury that they were the sole judges of the facts and weight of the evidence. The judge could have properly stated that in his opinion there was ample evidence, and that would not have been error. (*People* v. *Gosden*, 6 Cal.2d 14 [56 P.2d 211]; see, also, *People* v. *Ottey*, 5 Cal.2d 714 [56 P.2d 193]; 9 Wigmore on Evidence (3d ed.), §§ 2551 and 2551a.)

The evidence on the sanity issue was so clear and convincing that it is difficult to see how the jury could have reached any other verdict than that appellant was sane. The error did not result in a miscarriage of justice and was not prejudicial.

The judgment and order appealed from are affirmed.

Ward, J., and Ogden, J. pro tem., concurred.