[Crim. No. 5778. In Bank. June 28, 1956.]

THE PEOPLE, Respondent, v. ROBERT S. VOGEL, Appellant.

Buttermore & Lightner and Wesley B. Buttermore, Jr., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, John S. McInerny and William E. James, Deputy Attorneys General, for Respondent.

TRAYNOR, J.—Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of bigamy and from an order denying his motion for a new trial.

On September 17, 1944, defendant married Peggy Lambert in a civil ceremony in New Orleans, Louisiana. He was in the Coast Guard and was sent overseas six days after the marriage. Upon his discharge in December, 1945, he returned to Peggy. In 1947 they were remarried in a religious ceremony in New Orleans. They had two children. Peggy testified that they separated several times, and defendant also testified that the marriage was an unhappy one.

In September, 1950, defendant was called to active duty for the Korean War. Peggy received an allotment as his wife until November 13, 1951, when he was released from active duty. Upon his release he did not return to Peggy.

In December, 1951, Peggy and the children moved to St. Louis, Missouri. On April 15, 1952, she was seriously injured in an automobile accident. Defendant learned of her injury on May 19, 1952, went to St. Louis, and took her and the children to New Orleans, where he remained until August, 1952.

On March 6, 1953, defendant married Stelma Roberts, the prosecuting witness, in San Diego County, California. Stelma was granted a final decree of divorce on July 1, 1954.

At the trial Peggy testified that she had never divorced defendant. She admitted that she had obtained a driver's license in her maiden name in 1951. Defendant admitted that he had not divorced Peggy and conceded that he could not prove by record or other direct evidence that she had divorced him. He sought to testify that in 1950, before his call to active duty, Peggy told him that she was going to divorce him in a jurisdiction unknown to him so that he could not contest the custody of their children. The court rejected such testimony as immaterial. He offered other evidence tending to show that during his absence Peggy had married an Earl Heck, namely, testimony of Mr. and Mrs. Lucas, owners of an apartment in St. Louis, Missouri, that Peggy and the children lived in one of their apartments with Heck during the first four months of 1952, that she received mail, telephone calls, and visitors as Mrs. Earl Heck, and that when she was injured in the automobile accident she was identified as Mrs. Heck. The court rejected

the evidence on the ground that it would show merely a "barnyard romance" and that under *People* v. *Kelly,* 32 Cal.App.2d 624 [90 P.2d 605], defendant's good faith belief that she had divorced him and married Heck was immaterial.

We have concluded that defendant is not guilty of bigamy, if he had a bona fide and reasonable belief that facts existed that left him free to remarry. As in other crimes, there must be a union of act and wrongful intent.[1] So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication.[2] Sections 281 and 282[3] do not expressly exclude it nor can its exclusion therefrom be reasonably implied. Certainly its exclusion cannot be implied from the mere omission of any reference to intent in the definition of

---

[1] "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." (Pen. Code, § 20.)

"All persons are capable of committing crimes except those belonging to the following classes:

"Four. Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent." (Pen. Code, § 26, subd. 4.)

[2] The commissioners' annotation to section 20 makes it abundantly clear that the word "intent" in that section means wrongful intent. Thus, they quoted Bishop (1 Bishop's Crim. Law, § 227): " 'There is only one criterion by which the guilt of men is to be tested. It is whether the mind is criminal. . . . It is, therefore, a principle of our legal system, as probably of every other, that the essence of the offense is the wrongful intent, without which it cannot exist.' The opinion of Mr. Bishop finds full support in the following adjudged cases. [Citations.]" (Commissioners' annotation to section 20, California Penal Code of 1872.)

Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement. (See Sayre, *Public Welfare Offenses,* 33 Columb.L.Rev. 55, 72-75; Hall,*Prologomena to a Science of Criminal Law,* 89 U.Pa.L.Rev. 549, 568-569; Wechsler, The American Law Institute; Some Observation On Its Model Penal Code, 42 A.B.A. 321, 324.)

[3] "Every person having a husband or wife living, who marries any other person, except in the cases specified in the next section, is guilty of bigamy." (Pen. Code, § 281.)

"The last section does not extend—

"1. To any person by reason of any former marriage, whose husband or wife by such marriage has been absent for five successive years without being known to such person within that time to be living; nor,

"2. To any person by reason of any former marriage which has been pronounced void, annulled, or dissolved by the judgment of a competent court." (Pen. Code, § 282.)

bigamy, for the commissioners' annotation to section 20 makes it clear that such an omission was not meant to exclude intent as an element of the crime but to shift to defendant the burden of proving that he did not have the requisite intent. The commissioners quote at length from *People* v. *Harris*, 29 Cal. 678, 681-682. That case involved a conviction for twice voting at the same election. The defendant sought to defend upon the ground that he was so drunk at the time he voted the second time that he did not know what he was doing and that he therefore had no criminal intent. The court held that the trial court erred in excluding from the jury any consideration of the mental state of the defendant by reason of his intoxicated condition, stating: "It is laid down in the books on the subject, that it is a universal doctrine that to constitute what the law deems a crime there must concur both an evil act and an evil intent. *Actus non facit reum nisi mens sit rea.*—1 Bish. on Cr. Law, Secs. 227, 229; 3 Greenl. Ev., Sec. 13. Therefore the intent with which the unlawful act was done must be proved as well as the other material facts stated in the indictment; which may be by evidence either direct or indirect, tending to establish the fact, or by inference of law from other facts proved. When the act is proved to have been done by the accused, if it be an act in itself unlawful, the law in the first instance presumes it to have been intended, and the proof of justification or excuse lies on the defendant to overcome this legal and natural presumption.—3 Greenleaf's Ev., Secs. 13, 14, 18. Now, when the statute declares the act of voting more than once at the same election by the same person to be a felony, it must be understood as implying that the interdicted act must be done with a criminal intention, or under circumstances from which such intention may be inferred. The defendant's counsel, at the trial, seems to have apprehended the true rule of law on the subject, and to have regarded the burden as on the defendant to show by evidence that the act of his voting the second time was not criminal, . . . ." The commissioners go on to state: "The opinion of the Court in *People* v. *Harris* is given at length because it is a correct and authoritative exposition of Sec. 20; . . ."

The "correct and authoritative exposition of Sec. 20" as applied in *People* v. *Harris* to the crime of twice voting in the same election applies with even greater force to the crime of bigamy and compels the conclusion that guilty

knowledge, which was formerly a part of the definition of bigamy[4] was omitted from section 281 to reallocate the burden of proof on that issue in a bigamy trial. █ Thus, the prosecution makes a prima facie case upon proof that the second marriage was entered into while the first spouse was still living (see *People* v. *Priestly*, 17 Cal.App. 171, 173-174 [118 P. 965]; *People* v. *Huntley*, 93 Cal.App. 504, 506 [269 P. 750]), and his bona fide and reasonable belief that facts existed that left the defendant free to remarry is a defense to be proved by the defendant.

█ Nor must the exclusion of wrongful intent be implied from the two exceptions set forth in section 282. Obviously they are not all inclusive, for it cannot be seriously contended that an insane person or a person who married for the second time while unconscious (Pen. Code, § 26, subds. 3, 5) could be convicted of bigamy. █ Moreover, the mere enumeration of specific defenses appropriate to particular crimes does not exclude general defenses based on sections 20 and 26 (see 2 Lewis' Sutherland, Statutory Construction, § 495, p. 924; 23 Cal. Jur. Statutes, § 118, p. 742), for the enumerated defenses in no way conflict with such general defenses.

It is significant that the commissioners did not list among the precedents of sections 281 and 282 the case of *Commonwealth* v. *Mash*, 7 Metc. (Mass.) 472, decided in 1844, which construed a similar statute to preclude a bona fide and reasonable belief in the death of the prior spouse as a defense to bigamy. Nor do any of the precedents listed refer to that case or to the principle for which it stands. (See Cal. Pen. Code of 1872, annos. to §§ 281 and 282; see also 1 Bishop's Crim. Law, 9th ed., § 303(a), note 6, pp. 206-214.)

█ It is also significant that under section 61, subdivision 2, of the Civil Code a subsequent marriage contracted by a person when the former husband or wife of such person "is generally reputed or believed by such person to be dead . . . is valid until its nullity is adjudged by a competent tribunal," even if the former husband or wife has not been absent for five years and the general repute or belief proves to be erroneous. It would be anomalous to hold that although in the Civil Code the Legislature sanctions such a marriage and makes it valid until it is annulled (it may never be annulled

---

[4]Section 121, Crimes and Punishment Act, as amended by Cal. Stats. 1861, p. 415, § 1.

and may therefore always be valid), in the Penal Code the Legislature makes such a person guilty of bigamy. (See Armstrong, California Family Law, 39-41.) Nor would it be reasonable to hold that a person is guilty of bigamy who remarries in good faith in reliance on a judgment of divorce or annulment that is subsequently found not to be the "judgment of a competent court" (Pen. Code, § 282), particularly when such a judgment is obtained by the former husband or wife of such person in any one of the numerous jurisdictions in which such judgments can be obtained. Since it is often difficult for laymen to know when a judgment is not that of a competent court, we cannot reasonably expect them always to have such knowledge and make them criminals if their bona fide belief proves to be erroneous.

The foregoing construction of sections 281 and 282 is consistent with good sense and justice. (See dissenting opinion of McComb, J., in *People* v. *Kelly*, 32 Cal.App.2d 624, 628 [90 P.2d 605].) ■ The severe penalty imposed for bigamy,[5] the serious loss of reputation conviction entails, the infrequency of the offense, and the fact that it has been regarded for centuries as a crime involving moral turpitude, make it extremely unlikely that the Legislature meant to include the morally innocent to make sure the guilty did not escape.

*People* v. *Hartman,* 130 Cal. 487 [62 P. 823], is contrary to our opinion herein, but the basis of that decision was repudiated in *Matter of Application of Ahart,* 172 Cal. 762, 764-765 [159 P. 160], in plain language expressly referring to bigamy. The Ahart case involved an ordinance prohibiting the transportation of liquor. This court held that the ordinance did not apply to innocent transportation, stating: "The case comes quite clearly within the reasoning and principle of the English case of *Regina* v. *Tolson,* L.R. 23 Q.B.Div. 168, [1889], s.c., 40 Alb.L.J. 250, which case itself receives detailed consideration in 2 Lewis' Sutherland's Statutory Construction, section 527. The case was a criminal charge against a woman for a bigamous marriage. It had been held that one who marries a second time under an honest but erroneous belief that a decree of divorce which had been granted was valid is afforded no protection by the invalid decree, and that evidence of his good faith will be excluded. (2 Wharton on Criminal Evidence, 8th ed., § 1695a.) But

---

[5] "Bigamy is punishable by a fine not exceeding five thousand dollars ($5,000) or by imprisonment in a county jail not exceeding one year or in the state prison not exceeding ten years." (Pen. Code, § 283.)

in the later Tolson case the woman had married five years instead of seven years after her husband's desertion of her, under the belief held in good faith that her husband was dead. The proposition considered was whether honest belief and good faith constituted a defense. It was conceded that the prisoner 'falls within the very words of the statute.' Cave, J., said: 'At common law an honest and reasonable belief in circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense. . . . So far as I am aware it has never been suggested that these exceptions do not equally apply to the case of statutory offenses unless they are excluded expressly or by necessary implication.' '' (172 Cal. 764-765; see also *Thomas* v. *The King,* 59 Com.L.Rep. [Australia] 279.) For the foregoing reasons *People* v. *Hartman, supra,* 130 Cal. 487, which was overruled *sub silentio* in *Matter of Application of Ahart, supra,* 172 Cal. 762, is now expressly overruled and *People* v. *Kelly,* 32 Cal.App.2d 624 [90 P.2d 605], is disapproved.

In a prosecution for bigamy evidence that a person is generally reputed to be married is admissible as tending to show actual marriage. (See Pen. Code, § 1106; *People* v. *Beevers,* 99 Cal. 286, 289 [33 P. 844]; *People* v. *Van Wie,* 72 Cal.App.2d 227, 233 [164 P.2d 290].) The same evidence that would tend to prove an actual marriage, if offered by the People, could reasonably form the basis for an honest belief by a defendant that there was such marriage, that it was legally entered into, and that he was, therefore, free to remarry. The evidence offered to show that Peggy had married Earl Heck should therefore have been admitted.

The statement allegedly made by Peggy that she was going to divorce defendant was admissible on the issue of his belief that she had done so and it was also admissible to impeach her testimony that she did not tell him that she was going to divorce him. The exclusion of this evidence was clearly prejudicial, for it deprived defendant of the defense of a bona fide and reasonable belief that facts existed that left him free to remarry. Defendant did not waive this defense by offering the evidence on the issue of Peggy's actually getting a divorce rather than on the issue of good faith, for the trial court expressly stated that it would exclude all such evidence on the basis of *People* v. *Kelly, supra,* 32 Cal.App.2d 624. (See *People* v. *Kitchens, ante,* pp. 260,

262 [294 P.2d 17]; *cf. Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 757 [185 P.2d 597].)

There is nothing in the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940 (54 Stats. 1180; 50 U.S.C.A.App. § 501) that would preclude such a belief. A default judgment taken without complying with the provisions of the act is not void but voidable within 90 days after termination of service at the instance of the serviceman upon proper showing of prejudice. (*Allen* v. *Allen,* 30 Cal.2d 433, 435-436 [182 P.2d 551]; see also *Kromm* v. *Kromm,* 84 Cal.App.2d 523, 530 [191 P.2d 115]; *Wilterdink* v. *Wilterdink,* 81 Cal.App.2d 526, 532-534 [184 P.2d 527].)

The judgment and order are reversed.

Gibson, C. J., Carter, J., Schauer, J., Spence, J., and McComb, J., concurred.

SHENK, J.—I dissent.

The defendant was charged by information with the violation of section 281 of the Penal Code, a felony, in that on March 6, 1953, in San Diego County, he married Stelma G. Roberts, having a lawful wife, Peggy Vogel, then living. He was found guilty as charged. Imposition of sentence was suspended and probation was granted on condition that he spend four months in the adult detention facility in San Diego; that he support his children in accordance with a support agreement; that he should not leave the State of California; that within one year he "absolve" a marriage contract made by him with a Mrs. Harrington on February 15, 1954, in Tijuana, Mexico.

The prosecution proved the successive marriages of the defendant, to Peggy in 1944 and to Stelma in 1953. Peggy testified that she had not obtained a divorce from the defendant and that she had not received any notice indicating that he was seeking a divorce from her. In the absence of conflicting evidence this would be a showing sufficient to support a conviction for bigamy. The defendant conceded that he had not obtained a divorce from Peggy.

Bigamy is a statutory crime, defined in section 281 of the Penal Code, as follows: "Every person having a husband or wife living, who marries any other person, except in the cases specified in the next section, is guilty of bigamy." The exceptions contained in section 282 are as follows:

"The last section does not extend, ——

"1. To any person by reason of any former marriage, whose husband or wife by such marriage has been absent for five successive years without being known to such person within that time to be living; nor

"2. To any person by reason of any former marriage which has been pronounced void, annulled, or dissolved by the judgment of a competent court."

While the Legislature has provided a condition and a term of years after which a person may in good faith reasonably conclude that an absent spouse is dead, it has provided no such condition or term for concluding that an absent spouse has procured a divorce. The Legislature has not, either expressly or by reasonable implication, made a mere belief in the existence of a prior divorce a defense to a bigamy prosecution.

The defendant's contention that he had married Stelma honestly believing that Peggy had theretofore divorced him was properly rejected. "It is a familiar rule, that to constitute a crime there must be a union of act and intent; but our code provides that the word 'wilfully,' when applied to the intent with which an act is done or omitted implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (*People* v. *O'Brien,* 96 Cal. 171, 176 [31 P. 45]; *People* v. *Hartman,* 130 Cal. 487, 490 [62 P. 823].) It was said in *Matter of Ahart,* 172 Cal. 762 at page 764 [159 P. 160]: "[S]ome acts [are] made crimes by the very terms of the law where the fraudulent or wicked intent is conclusively presumed from the commission of the act itself or where the act is denounced as criminal without regard to the facinorous intent." The act of bigamy involves moral turpitude on the part of the bigamist. It also creates a serious mischief to society which the law seeks to prevent by penal sanctions.

The opinion refers to the comment of the code commissioners that the opinion in *People* v. *Harris,* 29 Cal. 678, 679, is a correct and authoritative exposition of section 20 of the Penal Code. It was there held that a defendant may introduce evidence to show that he was intoxicated at the time he committed the act complained of (voting twice at the same election), not as an excuse for the crime but to enable the jury to determine whether he was incapable of knowing what he was doing by reason of intoxication. That rule has

no application to a charge of bigamy where the defendant voluntarily and consciously has entered into a second marriage knowing that his first spouse is alive. A specific intent to commit the crime of bigamy is not required by statute expressly nor by reasonable interpretation. The validity of marriages is of sufficient social importance to uphold the Legislature's purpose to provide that where the specific statutory exceptions do not apply a person remarries at his peril. Any change in this regard should be made by the Legislature.

This court holds that the evidence rejected by the trial court was admissible on the issue whether facts existed which left the defendant free to remarry. I cannot agree with this conclusion. The defendant conceded that he could offer no direct evidence of a divorce. As circumstantial evidence he offered the following: a purported declaration by Peggy in 1950 that she was going to divorce him in a jurisdiction unknown to him; a driver's license issued to Peggy in her maiden name in 1951 in Louisiana, and testimony of a Mr. and Mrs. Lucas tending to show cohabitation between Peggy and Earl Heck in 1952.

Defendant offered to prove Peggy's 1950 declaration on the theory that it was admissible under the Hillmon doctrine as evidence that she had later obtained a divorce. (*Mutual Life Ins. Co.* v. *Hillmon,* 145 U.S. 285 [12 S.Ct. 909, 36 L.Ed 706].) He also cites *People* v. *Alcalde,* 24 Cal.2d 177 [148 P.2d 627], *People* v. *Silver,* 16 Cal.2d 714 [108 P.2d 4], and *People* v. *Chenault,* 74 Cal.App.2d 487 [169 P.2d 29], in support of his position. Declarations of intent have generally been held admissible to prove a completed act only where the declarant is dead or otherwise unavailable (*People* v. *Alcalde,* 24 Cal.2d 177, 185-188 (*supra*); *People* v. *Weatherford,* 27 Cal.2d 401, 420-423 [164 P.2d 753]) or where they fall within other exceptions to the hearsay rule. (*People* v. *Silver, supra,* 16 Cal.2d 714; *People* v. *Chenault, supra,* 74 Cal.App.2d 487; *People* v. *Fong Sing,* 38 Cal.App. 253 [175 P. 911].) This declaration is not within those exceptions.

In those jurisdictions where an honest but erroneous belief, reasonably entertained, that a valid divorce has been granted as to a prior marriage constitutes a defense to a prosecution for bigamy, it is required that a bona fide attempt be made to ascertain the facts. (*Le Sueur* v. *State* (1911), 176 Ind. 448 [95 N.E. 239]; *Robinson* v. *State* (1909), 6 Ga.App. 696 [65 S.E. 792]; *Squire* v. *State* (1874), 46 Ind. 459; *Baker*

v. *State* (1910), 86 Neb. 775 [126 N.W. 300, 27 L.R.A. N.S. 1097]; see also *Gillum* v. *State* (1941), 141 Tex.Crim.Rep. 162 [147 S.W.2d 778]; *White* v. *State* (1928), 157 Tenn. 446 [9 S.W.2d 702, 704]; 10 C.J.S. 367-368; 57 A.L.R. 786.) A mere belief, without a further showing of diligent inquiry and investigation is clearly insufficient.

The fact that a driver's license was issued to Peggy under her maiden name would not have furnished proof of divorce. This license was obtained during the time when she was receiving allotment checks as the defendant's wife. In order to obtain a default divorce during the time he was in military service she was required by law (Soldiers' and Sailors' Civil Relief Act of 1940, 54 Stats. 1180, ch. 888, § 200) to execute an affidavit that her husband was in military service. The presumption is that she obeyed the law. (Code Civ. Proc. § 1963, subd. 33.)

Nor was the testimony of Mr. and Mrs. Lucas admissible as proof of a divorce. The defendant contends that their evidence would have established a marriage by cohabitation and repute from which a presumption of validity would arise. (Code Civ. Proc. § 1963, subd. 30.) The presumption in favor of the legality of a marriage does not arise in favor of a marriage proved solely by cohabitation and repute. In view of the statutory requirement of solemnization it arises only in favor of a marriage regularly solemnized. (*McKibbin* v. *McKibbin*, 139 Cal. 448 [73 P. 143]; *Wilcox* v. *Wilcox*, 171 Cal. 770 [155 P. 95]; *Estate of Hughson*, 173 Cal. 448 [160 P. 548]; see *Estate of Gill*, 23 Cal.App.2d 212 [72 P.2d 771].) Moreover the presumption of validity of a ceremonial marriage is applied only in civil cases. The authorities are in general agreement that it may not be relied upon by a defendant in a bigamy prosecution. (*Fletcher* v. *State*, 169 Ind. 77 [81 N.E. 1083, 124 Am.St.Rep. 219]; 7 Am.Jur. p. 769, note 11.5; anno. 14 A.L.R.2d 34; 34 A.L.R. 464, 491.)

Section 4½ of article VI of the Constitution of this state enjoins upon the court the duty not to reverse a judgment or an order denying a motion for a new trial on account of an improper "rejection of evidence . . . unless, after an examination of the entire cause, including the evidence, . . . the error complained of has resulted in a miscarriage of justice."

The rejected evidence was not competent to prove that Peggy had obtained a divorce. Even if the rejection of that

evidence was error no prejudice resulted. The defendant received a fair trial. The jury was fully and fairly instructed and the proof of guilt of violation of the statute was without substantial conflict.

I would affirm the judgment and order.

Respondent's petition for a rehearing was denied July 24, 1956. Shenk, J., was of the opinion that the petition should be granted.